UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| GUY T. MITCHELL, | ) | FILED: JUNE 3, 2008 |
| | ) | 08CV3193        TG |
| Plaintiff, | ) | JUDGE GUZMAN |
| | ) | No.  MAGISTRATE JUDGE COLE |
| v. | ) | |
| | ) | Pending in the United States District Court |
| CARBON CAPITAL II, INC., | ) | for the Southern District of New York |
| | ) | bearing Case No. 08 Civ. 4319 (JES) |
| Defendant. | ) | |

GUY T. MITCHELL'S MEMORANDUM OF LAW IN SUPPORT
OF HIS MOTION TO COMPEL COMPLIANCE WITH SUBPOENAS
ISSUED TO HYATT CORPORATION AND HYATT EQUITIES, L.L.C.

Plaintiff Guy T. Mitchell submits this memorandum of law and the attached Declaration

of Jonathan N. Francis ("Francis Declaration") in support of his Motion to Compel Compliance

with Subpoenas requesting documents issued to nonparties Hyatt Corporation and Hyatt

Equities, L.L.C. (collectively, "Hyatt").

PRELIMINARY STATEMENT

The underlying litigation pending in the Southern District of New York concerns three

parties. Plaintiff Guy T. Mitchell is a manager and member of plaintiff Royal Palm Senior

Investors, LLC ("Royal Palm").[1] Royal Palm is the manager of the Royal Palm Hotel (located in

Miami Beach). Defendant Carbon Capital II, Inc. ("Carbon Capital") is Royal Palm's mezzanine

lender. Mitchell seeks a declaratory judgment against Carbon Capital that there is no default by

Royal Palm under the mezzanine loan agreement and injunctive relief prohibiting Carbon Capital

from seeking to foreclose on its security under the loan agreement.

---

[1]    After issuance of the Subpoenas, Royal Palm was involuntarily joined as a plaintiff in the
litigation by Order dated May 27, 2008.

Mitchell has alleged, inter alia, that Carbon Capital breached its duty of good faith under its loan agreement with Royal Palm by interfering with Royal Palm's agreement to sell the Royal Palm Hotel to Hyatt. Hyatt is the only possible source of certain evidence central to that claim. Mitchell's May 15, 2008 subpoenas to Hyatt therefore seek production of documents that are direct or circumstantial evidence of Carbon Capital's interference with Hyatt's acquisition of the hotel, or that would lead to the discovery of such evidence.[2]  (Mitchell's subpoenas are attached as Ex. 8 to the Francis Declaration.) Although Hyatt has never identified any undue burden posed by the subpoenas' document requests, it has declined to comply with those requests, as modified by Mitchell in the course of negotiating Hyatt's response.

## STATEMENT OF FACTS

As set forth fully in the attached Francis Declaration, Hyatt played a crucial role in the event leading to litigation in the Southern District of New York.

On October 24, 2007, Carbon Capital and Royal Palm (and Mitchell as Royal Palm's primary guarantor) entered into a Settlement Agreement, the terms of which were to be held in strict confidence by the parties. One confidential term of the Settlement Agreement was a March 31, 2008 deadline for Royal Palm either to repay the mezzanine loan or to sell the Royal Palm Hotel.

In the fall of 2007, Royal Palm and Hyatt entered into negotiations for Hyatt to acquire the Royal Palm Hotel. Hyatt and Royal Palm executed a Letter of Intent on November 15, 2007 and a Purchase and Sale Agreement on December 17, 2007, with the transaction to close on February 1, 2008. By the morning of January 28, 2008, Hyatt had a full management staff on site at the Royal Palm Hotel and had begun assume control of hotel's operations.

---

[2]     Because the court in the Southern District of New York set a hearing on the motion for a preliminary injunction for June 18, 2008 and directed the parties to have discovery completed by that

-2-

On January 24, 2008, Hyatt began to make a series of rapid-fire and peculiar requests for extensions of the February 1 closing date. After having made two successive requests for extensions of the closing date over the preceding three days, on January 28, 2008 at 9:53 AM, David Tarr (Hyatt's Senior Vice President of Real Estate and Development, North America Division - Eastern Region) emailed Mitchell to request an additional extension of the closing date without explanation. Mr. Tarr's email concluded, "Again, I am very sorry to be acting in this manner. I am more troubled by it than you can imagine." (Ex. 1 to Francis Decl.) Mr. Tarr followed his email to Mitchell with a voicemail that revealed Hyatt Chairman "Tom Pritzker feels that we need until April 1st to close." (Ex. 2 to Francis Decl.) Since an April 1 closing date would not comply with the confidential March 31 deadline, Mitchell had to reject Hyatt's request. Later on January 28, 2008, Hyatt withdrew its shadow management from the Royal Palm Hotel and terminated the Purchase and Sale Agreement.

Following Hyatt's termination of the transaction, Mr. Mitchell had further communications with Mr. Tarr and Marc Sallette (Hyatt's Director of Development) in which they expressed that they were waiting to hear from Hyatt "corporate" before proceeding wit the transaction, as they wanted. After litigation commenced with Carbon Capital, Mr. Sallette told Mr. Mitchell that he had heard from "a credible source" that Carbon Capital had always planned to take control of the Royal Palm Hotel.

In the course of attempting to negotiate Hyatt's compliance with the subpoenas, Mitchell modified his requests to eliminate any undue burden on Hyatt. Hyatt has objected to Mitchell's subpoenas, but has never identified any undue burden that it would suffer as a result of complying with Mitchell's modified requests. Hyatt has stated that it intends to undertake an extremely and unduly circumscribed search limited to only five individuals, limited largely to a

---

date, the subpoenas to Hyatt were returnable on May 23. Mitchell advised Hyatt of those circumstances.

nine day period, and limited to a subset of search terms, and will only broaden its search if
Mitchell can prove using "direct evidence that Hyatt had communications with defendants [sic]."
Hyatt also stated that -- regardless of the results of its extremely limited search -- it intends to
edit its production of responsive documents to withhold every document that does not, in its
opinion, reflect direct communication between Carbon Capital and Hyatt regarding the Royal
Palm Hotel acquisition. As of this date, Hyatt has not informed Mitchell as to when its search
will begin, much less when its production will be complete.[3]

## ARGUMENT

Mitchell has offered to restrict his requests, such that Hyatt need only search the files of
its "development staff" who worked on the Royal Palm Hotel acquisition (i.e., Thomas Pritzker,
Steve Haggerty, Jim Abrahamson, David Tarr, Marc Sallette and their direct subordinates with
substantive responsibility) using 28 search terms, as limited to the time period from
December 17, 2007 (the date that Hyatt's agreement with Royal Palm was signed) through
February 1, 2008, with all responsive documents designated Highly Confidential for attorneys'
eyes only. Those search parameters are designed to limit Hyatt's collection to documents that
are, or that are reasonably calculated to lead to, admissible direct or circumstantial evidence of
Carbon Capital's breach of its duty of good faith by interfering with the sale of the hotel to
Hyatt, an issue that is currently being litigated in the Southern District of New York. Hyatt has
refused to comply with Mitchell's modified requests.

Despite Hyatt's status as a non-party, Mitchell is entitled to seek discovery from Hyatt of
"any non-privileged matter that is relevant to any party's claim or defense," including those
"reasonably calculated to lead to the discovery of admissible evidence," under the Federal Rule

---

[3]       As detailed in the Francis Declaration, counsel for Mitchell and Hyatt have consulted numerous
times in a good faith attempt to negotiate the terms of Hyatt's production and are unable to reach accord.

of Civil Procedure's permissive standard. Fed. R. Civ. Proc. 26(b)(1); Williams v. Blagojevich, No. 05-C-4673, 2008 WL 68680, at *3 (N.D. Ill. Jan. 2, 2008) ("[T]he scope of material obtained by a Rule 45 subpoena is as broad as permitted under the discovery rules . . . if the material is relevant, not privileged, and is, or is likely to lead to, admissible evidence, it is obtainable by way of a subpoena.") (ellipses in original; quoting Jackson v. Brinker, 147 F.R.D. 189, 193-94 (S.D. Ind. 1993); Ligas v. Maram, No. 05-C-4331, 2007 WL 4225459, at *3 (N.D. Ill. Nov. 27, 2007) ("The requests are not overly broad because they are reasonably calculated to lead to the discovery of admissible evidence.").

Mitchell need only make a preliminary showing that his subpoenas' requests seek documents relevant to the issues being litigated in the Southern District of New York in order to shift the burden to Hyatt to demonstrate why it should be able to avoid discovery. See West v. Miller, No. 05-C-4977, 2006 WL 2349988, at *2 (N.D. Ill. Aug. 11, 2006); Graham v. Casey's General Stores, 206 F.R.D. 251, 254 (S.D. Ind. 2002) ("The party opposing discovery has the burden of showing the discovery is overly broad, unduly burdensome, or not relevant.") (citing Wauchop v. Domino's Pizza, Inc., 138 F.R.D. 539, 543 (N.D. Ind. 1991) and Schaap v. Executive Industries, Inc., 130 F.R.D. 384, 387 (N.D. Ill.1990)).

Mitchell's modified requests seek direct or circumstantial evidence that Carbon Capital directly or indirectly interfered with Hyatt's acquisition of the Royal Palm Hotel. Such evidence would be probative to Mitchell's claim that Carbon Capital breached its duty of good faith by interfering with Hyatt's acquisition of the Royal Palm Hotel or by failing to hold confidential the March 31 deadline for sale of the hotel. There is already substantial circumstantial evidence that Hyatt was aware of the confidential March 31 deadline and that Hyatt sought a stroke of

midnight extension at the direction of Thomas Pritzker in order to exploit that deadline for both Hyatt's and Carbon Capital's benefit. (Francis Decl. ¶¶ 8-14, 16, 18.)

Hyatt has stated ipse dixit that compliance with Mitchell's requests would be burdensome. Mere invocation of the word "burden", however, does not permit Hyatt to avoid its obligations under Rule 45. See Ligas v. Maram, 2007 WL 4225459, at *4 ("Rule 45(c)(3)(A)(iv) does not provide a mechanism for this Court to quash a subpoena merely because compliance may be burdensome; rather, the burden imposed must be 'undue.'"). Hyatt's burden of complying with Mitchell's modified requests is undue only if "it is not justified by an offsetting benefit to the administration of justice." See Northwestern Memorial Hospital v. Ashcroft, 362 F.3d 923, 928-29 (7th Cir. 2004) (in excusing compliance with subpoena seeking medical records of abortion patients, "[t]he only issue for us is whether, given that there is a potential psychological cost to the hospital's patients, and a potential cost in lost goodwill to the hospital itself, from the involuntary production of the medical records even as redacted, the cost is offset by the probative value of the records."); Ligas v. Maram, 2007 WL 4225459, at *4 (potential probative value of subpoenaed documents, including patient medical records, and their potential to lead to discovery of admissible evidence outweighed significant burden of producing); Patterson v. Burge, No. 03 C 4433, 2005 WL 43240, at *1 (N.D. Ill. Jan. 6, 2005) ("In this circumstance, the court must engage in a balancing process, balancing the burden of compliance against the benefits of the requested production."). Thus, Mitchell's need for complete discovery from Hyatt must be weighed against the burden to Hyatt of compliance.

## I.    Hyatt Intends To Improperly Limit Its Search For Responsive and Relevant Documents

Hyatt intends to limit its document search to five custodians, an incomplete number of search terms and a nine-day time period. The Court should reject Hyatt's attempt to do so.

Hyatt is the only source of evidence reflecting oral communications between it and Carbon Capital or its agents. Hyatt's proposed limited search would deny Mitchell the ability to examine relevant documents in order to evaluate the qualitative weight of the evidence. Although "pretrial discovery is a fishing expedition and one can't know what one has caught until one fishes," Northwestern Memorial Hospital v. Ashcroft, 362 F.3d at 931, documents responsive to Mitchell's modified requests would, at worst, potentially lead to the discovery of direct or circumstantial evidence of Carbon Capital's breach of its duty of good faith and, at best, would be evidence of that breach.

On the other hand, Hyatt has never even tried to specify what burden it would suffer by complying with Mitchell's modified requests. Instead, it has relied on its conclusory statement that the responsive documents are "voluminous and burdensome for Hyatt to collect, review and produce." (Ex. 10 to Francis Decl.) Hyatt's statement indicates that its concern is the administrative cost of its production, despite the fact that Hyatt apparently has not yet undertaken its search and thus cannot supply any details (e.g., number of documents, number of pages, number of boxes, etc.).[4] Moreover, there is reason to doubt Hyatt's ability or incentive to accurately evaluate the burden of its search.

Hyatt's refusal to search all relevant custodians is instructive in this respect. Hyatt intends to search the files of only five individuals: Thomas Pritzker; Steve Haggerty; Jim Abrahamson; David Tarr; and Marc Sallette. Hyatt initially identified the latter four individuals

---

[4]     Although Rule 45(c)(3)(B)(i) gives the Court latitude to modify or quash a subpoena seeking "a trade secret or other confidential research, development, or commercial information," any concern by Hyatt for the confidentiality of its documents is addressed by Mitchell's proposal that Hyatt give its production attorneys' eyes only protection under the Confidentiality Order. See Peoria Day Surgery Center v. OSF Healthcare System, Civ. No. 06-1236, 2008 WL 724798, at *4-5 (C.D. Ill. March 17, 2008); Deichtman v. E.R. Squibb & Sons, Inc., 740 F.2d 556 (7th Cir. 1984) ("The issue of confidentiality thus appears to us not an insurmountable one. It is a familiar problem in discovery cases and measures to preserve it are easily contrived.").

as the decision-making "development team" in the Royal Palm Hotel transaction, excluding Mr. Pritzker, and wrongly advised Mitchell that all relevant information would be reflected in their documents. But Hyatt was either unaware or concealed the fact that it was Hyatt's Chairman, Mr. Pritzker, who insisted that the closing date of the transaction be extended to the suspicious date of April 1, thus casting serious doubt on the reliability of Hyatt's representations regarding who are the appropriate custodians. Tellingly, Hyatt has refused to identify or even disclose the number of custodians who would fall within Mitchell's request that Hyatt search the files of these five executives and their subordinates with substantive responsibilities in the transaction. Thus, there is no basis for accepting Hyatt's attempt to restrict the number of custodians whose electronic files are searched.

Likewise, Hyatt cannot explain the burden posed by searching its custodians' electronic files using all 28 of Mitchell's terms. Once a custodian's electronic files are imaged, there is minimal if any burden to Hyatt in performing searches for additional search terms, especially when as here the additional number of terms is less than four. And whatever privilege review Hyatt deems appropriate can also be performed electronically on the results of that electronic document search. It is especially unacceptable that Hyatt intends to use only four terms to search Mr. Pritzker's files.

Similarly, Hyatt will be hard pressed to argue that a six-week temporal limitation (from December 17, 2007 to February 1, 2008) imposes any burden on it, much less an undue one. It is especially important that Hyatt's search include December 2007, because -- as summarized in the Francis Declaration (¶ 29) -- in mid-December, 2007, Carbon Capital was already planning to control the Royal Palm Hotel and its sale after March 31, 2008, despite Carbon Capital's knowledge at the time that Hyatt and Royal Palm had agreed to a transaction. It is unreasonable

- 8 -

for Hyatt to limit certain aspects of its search, and its entire search of Mr. Pritzker's files, to the nine days from January 24 to February 1, 2008. As above, expanding Hyatt's search of imaged electronic files from nine days to six weeks will generate limited or no additional cost.

The illusory burden that a complete search would impose on Hyatt must be weighed against the benefit to Mitchell for the potential discovery of direct or circumstantial evidence supporting his claim against Carbon Capital, or documents leading to such evidence. By excluding relevant custodians, search terms and time periods from its search, Hyatt all but guarantees that relevant responsive documents will go uncollected. Hyatt's indefensible limitations make clear that it has no basis to argue burden. Rather, it is trying to construct a document search that is all but pre-destined to result in no document production.

## II.    Hyatt Intends To Improperly Edit Its Production To Exclude Responsive and Relevant Documents

To compound the harm to Mitchell resulting from Hyatt's attempt to circumscribe its obligations under the subpoenas, Hyatt also intends to edit the results of its search to just the limited subset of documents that, in its subjective judgment, reflect direct communication between Carbon Capital and Hyatt regarding the Royal Palm Hotel acquisition. Hyatt is not capable of making such an assessment. But more importantly, Hyatt is not entitled to adjust the definition of what documents are "responsive" in order to justify its "inability" to locate such documents.

The benefit to Mitchell of the documents that Hyatt intends to withhold is clear. Even a document that does not obviously and unambiguously reflect Carbon Capital's direct acts of interference may be probative direct or circumstantial evidence of oral communications with Carbon Capital or its agents, or of Hyatt's awareness of the confidential March 31 deadline for sale of the Royal Palm Hotel. Limiting Hyatt's production to just "smoking guns" would not

- 9 -

only deprive Mitchell of potential evidence, but would eliminate any documents that might lead to the discovery of such evidence. Hyatt has no authority to restrict Mitchell's access to such evidence, particularly when it is the only source of documents reflecting what caused Hyatt to act the way that it did at the end of January 2008.

On the other hand, Hyatt has never provided a rationale for editing its production. Nor could it. Hyatt has never claimed that such a review process would spare it some burden. If anything, by undertaking an unnecessary substantive review of its production, Hyatt arguably will incur a significant additional cost. Thus, there is no conceivable justification for Hyatt's position as to what documents resulting from the search it will actually produce.

<u>CONCLUSION</u>

For the foregoing reasons, Mitchell's Motion to Compel Compliance with Subpoenas requesting documents issued to Hyatt should be granted in its entirety.

Dated: June 3, 2008

Respectfully submitted,

GUY T. MITCHELL

By:    s/ Peter S. Roeser _____
       One of His Attorneys

Peter S. Roeser
GRIPPO & ELDEN LLC
111 South Wacker Drive
Chicago, IL 60606
(312) 704-7700
proeser@grippoelden.com

Of counsel:
H. Peter Haveles, Jr.
Jonathan N. Francis
ARNOLD & PORTER LLP
399 Park Avenue
New York, NY 10022
(212) 715-1000

## CERTIFICATE OF SERVICE

I, Peter S. Roeser, an attorney, certify that on June 3, 2008, I caused a true and complete copy of the foregoing GUY T. MITCHELL'S MEMORANDUM OF LAW IN SUPPORT OF HIS MOTION TO COMPEL COMPLIANCE WITH SUBPOENAS ISSUED TO HYATT CORPORATION AND HYATT EQUITIES, L.L.C. to be served by messenger delivery upon the following:

> Nicholas P. Crowell
> Isaac S. Greaney
> Alex J. Kaplan
> SIDLEY AUSTIN LLP
> 787 Seventh Avenue
> New York, NY 10019
>
> Darrell J. Graham
> The Law Office of Darrell J. Graham, LLC
> 53 West Jackson Boulevard
> Suite 1334
> Chicago, IL 60604

> s/ Peter S. Roeser
> Peter S. Roeser

# DECLARATION OF
# JONATHAN N. FRANCIS

UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| GUY T. MITCHELL, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | No. |
| v. | ) | |
| | ) | Pending in the United States District Court |
| CARBON CAPITAL II, INC., | ) | for the Southern District of New York |
| | ) | bearing Case No. 08 Civ. 4319 (JES) |
| Defendant. | ) | |

## DECLARATION OF JONATHAN N. FRANCIS

1.    I am an associate at Arnold & Porter LLP, attorneys for plaintiff Guy T. Mitchell
in this action, which is pending in the Southern District of New York. I am admitted to practice
before the Courts of the State of New York. I submit this declaration in support of Mitchell's
Motion to Compel Compliance with Subpoenas that Arnold & Porter issued to Hyatt Corporation
and Hyatt Equities, L.L.C. (collectively, "Hyatt").

2.    Mitchell seeks to compel the production of documents that are highly relevant to
his allegations against defendant Carbon Capital II, Inc. ("Carbon Capital"), namely that Carbon
Capital breached its duty of good faith under a loan agreement by interfering with the agreement
to sell the Royal Palm Hotel (located in Miami Beach) to Hyatt. Even though Hyatt is the only
possible source of certain evidence that is central to Mitchell's claims, it has declined to comply
with its obligations under the two subpoenas.

3.    After multiple consultations by telephone and good faith attempts to negotiate the
terms of Hyatt's production, as detailed below, Mitchell and Hyatt have been unable to reach
accord.

## Background

4.      Mitchell is a manager and member of Royal Palm Senior Investors, LLC ("Royal Palm"). Royal Palm is the manager of the Royal Palm Hotel. Carbon Capital is Royal Palm's mezzanine lender. In the underlying litigation, Mitchell seeks a declaratory judgment that there is no default under the mezzanine loan agreement and injunctive relief prohibiting Carbon Capital from seeking to foreclose on its security under the loan agreement.

5.      On October 24, 2007, Carbon Capital and Royal Palm (and Mitchell as Royal Palm's primary guarantor) entered into a Settlement Agreement, the terms of which were to be held in strict confidence by the parties under its terms. One confidential term of the Settlement Agreement was a March 31, 2008 deadline for Royal Palm either to repay the mezzanine loan or to sell the Royal Palm Hotel. Failure to do so would constitute a default under the Settlement Agreement and would give Carbon Capital certain remedies.

6.      In the fall of 2007, Royal Palm and Hyatt entered into negotiations for Hyatt to acquire the Royal Palm Hotel. Hyatt and Royal Palm executed a Letter of Intent on November 15, 2007 and a Purchase and Sale Agreement on December 17, 2007.

7.      The Purchase and Sale Agreement contemplated that the transaction would close on February 1, 2008. Hyatt deposited $6 million of the total price as "earnest money" into escrow on December 19, 2007 and its due diligence at the hotel began. Under the Purchase and Sale Agreement, Hyatt had until January 28, 2008 to complete its due diligence and decide whether to terminate the transaction. Control of the hotel would not pass to Hyatt until the closing, but the Purchase and Sale Agreement permitted Hyatt to establish shadow management that would assume functional control of the hotel prior to February 1, 2008. Indeed, Royal Palm began to transfer control of the Royal Palm Hotel to Hyatt in late January 2008, and by the morning of January 28, Hyatt had a full management staff on site at the Royal Palm Hotel.

- 2 -

8.      Starting on January 24, 2008 and continuing over the next four days, Hyatt made a series of rapid-fire and peculiar requests for extensions of the February 1 closing date.

9.      First, on January 24, Hyatt requested an extension until February 8, purportedly to complete one portion of its due diligence concerning the hotel's beach and parking concession agreements. The next day, Royal Palm agreed to this short extension. Hyatt attorneys prepared a draft of a First Amendment to Purchase and Sales Agreement reflecting a February 8 closing date while maintaining the "hard date" for transfer of the hotel. On behalf of Royal Palm, Mitchell executed the amendment prepared by Hyatt's attorney.

10.     Two days later, on the evening of January 27, 2008, David Tarr (Hyatt's Senior Vice President of Real Estate and Development, North America Division - Eastern Region) called Mitchell again seeking an extension of the closing date. Mr. Tarr requested that the closing date be extended until later in February, explaining that Hyatt's takeover team needed more time to assume final control of the hotel.

11.     The next morning, January 28, 2008, at 9:53 AM -- even before Royal Palm had an opportunity to respond to Mr. Tarr's last request -- Mr. Tarr emailed Mitchell yet another request for an additional extension of the closing date. He wrote:

> I am about to get on a plane to LA and need to reach you. Heart on sleeve, I am emailing you to tell you that Hyatt needs until April 1 to close, not the end of February as I proposed last night. I am sorry about this. I know it must feel like I am jerking you around, but it is what it is. I will call you when we land, but need you to consider whether you can live with this. No change to hard date, only close date.

Mr. Tarr's email offered no explanation for Hyatt's third request for an extension to the closing date, but noted that Hyatt had until 5 PM to decide whether to terminate the Purchase and Sale Agreement, and asked that Mitchell sign a revised amendment immediately. The email concluded, "Again, I am very sorry to be acting in this manner. I am more troubled by it than

you can imagine." A true and correct copy of Mr. Tarr's January 28, 2008 email is attached

hereto as Exhibit 1.

12.     Mr. Tarr followed his January 28, 2008 email to Mitchell with a similar

voicemail, revealing further details about Hyatt's latest request for an extension:

> Guy, it's David. I sent you an e-mail this morning because we're
> about to board a flight, but I wanted to try to speak to you live.
> Tom Pritzker feels that we need until April 1st to close. I can't
> even express to you how terrible I feel about jerking you around,
> as you clearly are, but that's the final word from the Chairman.
> April 1st closing date. No change to hard date. We may be
> delayed en route, so if Leah [Hyatt's counsel] has to technically
> terminate the agreement, it's not because we don't intend to work
> towards a resolution with you, but -- read my email -- respond
> back to all of us including Leah. Let us know if you can live with
> what is now an 8 week delay. I completely understand if you
> can't. And I'm hoping that you can. And, again, my sincere
> apologies. I built my personal reputation on being credible and a
> straight dealer. I know it doesn't feel like that right now, but all I
> can do is assure you that these decisions are not being driven by
> me. And I do hope that we can reach an agreement. Again, sorry.
> And we'll reach out to you as soon as we land.

(Emphasis supplied.) A true and correct transcription of Mr. Tarr's January 28, 2008 voicemail

is attached hereto as Exhibit 2.

13.     An April 1 closing date would not comply with the confidential March 31

deadline and would cause Royal Palm to be in default under its Settlement Agreement with

Carbon Capital. Mitchell, therefore, had to reject Hyatt's request. Later on January 28, 2008,

Hyatt withdrew its shadow management from the Royal Palm Hotel and terminated the Purchase

and Sale Agreement.

14.     Between Hyatt's January 28 termination of the Purchase and Sale Agreement and

March 25, 2008, Mitchell had several communications with Mr. Tarr and Marc Sallette (Hyatt's

Director of Development). Mr. Tarr and Mr. Sallette expressed that they were upset by what had

happened and wanted to go forward with the transaction, but were waiting to hear from Hyatt "corporate" before proceeding further.

15.    On April 3, 2008, Carbon Capital sued Royal Palm and Mitchell in New York State Supreme Court under the caption <u>Carbon Capital II, Inc. v. Royal Palm Senior Investors, LLC and Guy T. Mitchell</u>. Carbon Capital alleged, <u>inter alia</u>, that Royal Palm had breached the Settlement Agreement by not selling the Royal Palm Hotel before March 31, 2008.[1]

16.    Mitchell also spoke with Mr. Sallette twice after Carbon Capital initiated suit, on April 4 and April 7, 2008. In those conversations, Mr. Sallette volunteered that, even before Carbon Capital's claim that Royal Palm was in default of the Settlement Agreement became public knowledge, he had heard from "a credible source" that Carbon Capital had always planned to take control of the Royal Palm Hotel.

17.    At an April 17, 2008 hearing, the court in this action ordered expedited discovery in preparation for a May 13 preliminary injunction hearing. Prior to the hearing, Carbon Capital filed a notice under Rule 41 to dismiss the action. Mitchell promptly filed a new action to reinstate the adjudication of the dispute as to whether there was a default before the United States District Court. The case was assigned to the same judge, Judge John E. Sprizzo. The court has reset the hearing for preliminary injunctive relief for June 18, 2008.[2]

18.    Mitchell contends that Carbon Capital has breached its duty of good faith by interfering with the agreement with Hyatt. In support of that contention, there is substantial circumstantial evidence that Hyatt was either directly or indirectly made aware by Carbon

---

[1]    On April 16, 2008, Mitchell and Royal Palm removed that action to the United States District Court for the Southern District of New York.

[2]    Judge Sprizzo held a conference on May 14, 2008, during which he scheduled the preliminary injunction hearing and once again ordered expedited discovery, including non-party discovery, to be completed by June 11. A true and correct copy of Judge Sprizzo's May 15, 2008 Order is attached hereto as Exhibit 3.

Capital of the Settlement Agreement's confidential March 31 deadline for sale of the Royal Palm
Hotel and that Hyatt sought a stroke of midnight extension at the direction of Thomas Pritzker in
order to exploit that deadline for both Hyatt's and Carbon Capital's benefit. First, Hyatt's late
January 2008 series of requests for successively later and delayed closing dates is illogical and
inconsistent with the fact that its shadow management had already assembled on site and was
poised to assume control of the hotel on January 28, 2008. Second, Hyatt's shifting and
inconsistent explanations of its need for extensions to the closing date are illogical and contrary
to the prior course of Hyatt's expedited behavior. Third, Mr. Tarr's January 28, 2008 email
indicates that he was uncomfortable with Hyatt's conduct in requesting an extension of the
closing date until April 1, such that he was "more troubled by it than you can imagine." Fourth,
Mr. Tarr's January 28, 2008 voicemail further distances himself from Hyatt's conduct ("all I can
do is assure you that these decisions are not being driven by me") and places the blame at the
highest level of Hyatt's hierarchy, its chairman, Thomas Pritzker. Fifth, in a transaction with an
accelerated set of timetables, it is suspicious that Hyatt would select a new closing date eight
weeks away. Sixth, given the significance of March 31 to Carbon Capital, Mr. Pritzker's choice
of the April 1 date is suspicious in and of itself. Seventh, there has never been any explanation
for why Hyatt's chairman became involved in dictating such details of the transaction as the
closing date, nor post-termination why Hyatt "corporate" was the decision-maker as to whether
to revive the transaction. Finally and most importantly, Carbon Capital has produced
documentary evidence in the parties' discovery demonstrating that, in mid-December 2007, days
before the purchase agreement was signed and with full knowledge of Hyatt's Letter of Intent
and of the final draft of Hyatt's Purchase and Sale Agreement, Carbon Capital was seeking
assurance of forbearance from Wachovia (the special servicer of the hotel's mortgage) through
the end of 2008 so that Carbon Capital itself could sell the Royal Palm Hotel -- meaning that

- 6 -

Carbon Capital already knew in December 2007 that there would be no sale to Hyatt by the March 31 deadline and that it would assume control of the hotel and any sale on April 1, 2008.[3]

### The Subpoenas to Hyatt

19.     On April 29, 2008, in the initial action, my firm served Hyatt with subpoenas returnable on May 9, 2008, requesting the production of documents responsive to seven requests. (Each of Hyatt Corporation and Hyatt Equities, L.L.C. was served with substantially identical document requests.) True and correct copies of those two subpoenas are attached hereto as Exhibit 4.

20.     On May 1, 2008, one of Hyatt's in-house counsel, Margaret Jones, Esq., called me in response to our subpoenas. Ms. Jones inquired as to the reason for and the scope of the subpoenas' document requests. I summarized the status of the litigation pending in the Southern District of New York, including the fact that the Court had ordered expedited discovery in preparation for the May 13 evidentiary hearing. I also summarized Hyatt's crucial role in the events leading to the litigation, as set forth above. During our conversation, Ms. Jones represented that approximately 44 Hyatt employees were custodians of potentially responsive documents.

21.     Immediately following that call, I sent Ms. Jones an email, attaching a copy of the Carbon Capital's complaint. In that email, I also suggested that she provide a list of the 44 potential custodians so that we could work with Hyatt to narrow its search for documents to the relevant ones. I never received any response to my email. A true and correct copy of my May 1, 2008 email is attached hereto as Exhibit 5.

---

[3]     Carbon Capital designated this email correspondence Confidential under the May 27, 2008 Confidentiality Order in this case and Mitchell may not disclose this document to Hyatt. We are, however, prepared to submit the document for in camera inspection at the hearing on this motion, if the Court desires to examine it.

22.    Since Ms. Jones had not responded to my email, on May 6, 2008 I called Ms. Jones to renew our attempt to work with Hyatt to limit the scope of its document search. During that call, Ms. Jones revised her prior representation, now stating that 70 Hyatt employees were potential custodians of responsive documents. I repeated my suggestion that she provide us with a list of those names so that we could limit Hyatt's search to only relevant custodians. Ms. Jones rejected my offer. Instead, she denied the relevance of our requests and denied that Royal Palm needed any documents from Hyatt whatsoever, indicating to me that Hyatt did not plan on producing any documents. Ms. Jones also informed me that Hyatt had retained outside counsel. I asked for contact information for Hyatt's counsel to continue the discussion, but Ms. Jones inexplicably declined to provide it and requested that I wait for him to contact me.

23.    Later on May 6, 2008, I sent a letter to Ms. Jones to express my concern that Hyatt did not plan to comply with our subpoenas. In that letter, I pointed out that Hyatt's production was due in only three days and that the evidentiary hearing in the Southern District of New York was to be held in only one week. I noted that, over the prior week, Hyatt had ignored or rejected my repeated offer to work cooperatively to narrow the scope of its search to only relevant custodians. So as not to interfere with our ability to seek judicial intervention before the May 13 hearing if necessary, I asked that Hyatt's outside counsel contact me immediately to discuss Hyatt's production. A true and correct copy of my May 6, 2008 letter is attached hereto as Exhibit 6.

24.    On May 7, 2008, Hyatt's counsel, Darrel J. Graham, Esq., responded to my letter. In his letter, he objected to the scope of our document requests and did not agree to any production whatsoever. A true and correct copy of Mr. Graham's May 7, 2008 letter is attached hereto as Exhibit 7.

25.     As noted above, Carbon Capital dismissed the original action, and Mitchell thereafter commenced this action. Consequently, on May 15, 2008, under this action, my firm served Hyatt with subpoenas renewing our document requests and seeking production by May 23, 2008. (Each of Hyatt Corporation and Hyatt Equities, L.L.C. was served with a substantially identical subpoena.) True and correct copies of Mitchell's pending subpoenas are attached hereto as Exhibit 8.

26.     That same day, I sent courtesy copies of Mitchell's renewed subpoenas along with a letter explaining the procedural posture of the litigation to Mr. Graham. In addition, to dispose of Hyatt's relevance objection, I enclosed a copy of Mitchell's First Amended Complaint, which explicated Hyatt's crucial role in the events leading to litigation. I requested a call to discuss Hyatt's response. A true and correct copy of my May 15, 2008 letter is attached hereto as Exhibit 9.

27.     Since May 16, 2008, I have made every attempt to negotiate with Mr. Graham a reasonable compromise on the scope of Hyatt's production. We spoke by telephone on May 16, 19 and 22, 2008 and have corresponded at length, as detailed below. In these negotiations, I proposed a series of compromises that impose reasonable limitations on the scope of Mitchell's requests and eliminate any undue burden on Hyatt. First, I proposed that Hyatt strike Document Request No. 1 and limit Request No. 3 to only documents concerning Mitchell. Second, in light of Ms. Jones' representation that 70 Hyatt employees people worked on the acquisition of the Royal Palm Hotel, I proposed that Hyatt exclude all clerical or operations staff from its search; the only individual custodians Mitchell seeks production from are the "development staff" who worked on the Royal Palm Hotel acquisition, such as Thomas Pritzker, Steve Haggerty, Jim Abrahamson, David Tarr, Marc Sallette and their direct subordinates who had substantive responsibility. Third, at Hyatt's request, in a May 20 email, I provided Mr. Graham with a list of

- 9 -

28 terms for searching its relevant custodians' electronic files, which search terms would limit Hyatt's electronic document production to direct or circumstantial evidence of Carbon Capital's interference with the Royal Palm Hotel acquisition. Fourth, to limit Hyatt's search to the relevant time period and exclude any documents regarding its contract negotiations with Royal Palm, I proposed that Hyatt limit its search to the period dating from the Purchase and Sale Agreement (December 17, 2007) until February 1, 2008. Fifth and finally, because Mr. Graham expressed concern that Hyatt's document collection might include confidential or proprietary information, I proposed that Hyatt designate its entire production Highly Confidential (i.e., attorneys' eyes only) under Judge Sprizzo's robust May 27, 2008 Confidentiality Order, pending negotiation of the appropriate designation of any specific document as necessary.

28.    On May 22, 2008, Mr. Graham informed me by email that Hyatt intended to limit its search to just four individuals: Steve Haggerty; Jim Abrahamson; David Tarr; and Marc Sallette. In a call with Mr. Graham later that day, I expressed concern that limiting Hyatt's search to only four custodians would exclude relevant documents from Hyatt's search. Mr. Graham cited Hyatt's investigation to assure me that those four individuals, who he collectively termed Hyatt's "development team," were the decision-makers responsible for the acquisition of the Royal Palm Hotel and that all relevant information would be reflected in their documents. I explained to him that he could not rely on that representation by Hyatt to limit discovery, as there was objective evidence revealing that other Hyatt employees were involved in decision-making in the acquisition. I read to him the transcription of Mr. Tarr's January 28, 2008 voicemail. Mr. Graham's reaction indicated that he was unaware until that moment that Hyatt Chairman Thomas Pritzker had personally insisted that Hyatt move its closing date for acquisition of the Royal Palm Hotel to April 1. Later that day, at his request, I provided Mr. Graham with the transcript of that voicemail.

- 10 -

29.    In the evening on May 22, 2008, Mr. Graham sent a letter setting forth Hyatt's objections. Notably, in those objections, Hyatt did not identify any undue burden that it would suffer as a result of complying with Mitchell's proposed modified requests; instead, Hyatt offered the conclusory statement that its responsive documents are "voluminous and burdensome for Hyatt to collect, review and produce." Hyatt noted that Mitchell's allegations of interference by Carbon Capital with Hyatt's acquisition of the hotel were made on information and belief, and on that basis it did not have to respond to certain of Mitchell's requests, most importantly Document Requests Nos. 5-7. In addition, Hyatt stated that its search would be extremely and unduly circumscribed. Hyatt limited its search to only five individuals; although Hyatt included Mr. Pritzker, it limited its search of his documents to four search terms and only a nine day period. Hyatt also limited the search terms it would use generally to a subset of the terms that I had proposed, despite the fact that use of the new terms could impose no burden when searching the custodians' imaged electronic files. Hyatt also limited certain aspects of its search to the nine day period preceding February 1, 2008. In addition, Hyatt stated that it could not predict when it might begin to produce documents. (As of this date, Hyatt has not supplied any additional information as to when its search will even begin, much less when its production will be complete.) But most importantly, Hyatt stated that -- regardless of the results of its extremely limited document search -- its production would be even more limited; Hyatt intends to edit its production of responsive documents to withhold every document that does not, in its opinion, reflect direct communication between Carbon Capital and Hyatt regarding the Royal Palm Hotel acquisition. A true and correct copy of Mr. Graham's May 22, 2008 letter is attached hereto as Exhibit 10.

30.    I responded the next day, May 23, 2008, with a letter. I set forth the reasonable modified requests I had proposed as a compromise. I noted that Hyatt has never identified any

undue burden imposed by these limited document requests. I further pointed out that Hyatt's response and objections prevented Mitchell access to discovery reasonably calculated to lead to admissible direct or circumstantial evidence of Carbon Capital's interference with the sale of the hotel to Hyatt. I stated that Hyatt's objections effectively limited its production to only documents that it believes support Mitchell's allegations, and that under Rule 45 Hyatt may not edit its production based on its view of whether a particular document is helpful to the requesting party. I asked Hyatt to agree by May 27 to produce documents in accordance with my proposed limitations, regardless of its view as to their probative value. A true and correct copy of my May 23, 2008 letter is attached hereto as Exhibit 11.

31.    On May 27, 2008, Mr. Graham responded by letter. Hyatt made clear that it refused to modify its objections. In particular, Hyatt asserted that it has the right to withhold documents based on its evaluation of their utility to Mitchell's case. Furthermore, Hyatt stated that it will only search additional custodian's files if Mitchell can prove to Hyatt's satisfaction using "direct evidence that Hyatt had communications with defendants [sic]." A true and correct copy of Mr. Graham's May 27, 2008 letter is attached hereto as Exhibit 12.

32.    After receiving Mr. Graham's letter, I twice called Mr. Graham on May 27, 2008 to determine if further discussion of Hyatt's response was warranted. Mr. Graham returned my first message, but -- as of this date -- he has not responded to my follow-up voice message. Mitchell and Hyatt have reached impasse.

33.    Hyatt's limited search is improperly calculated to eviscerate Mitchell's reasonable modified requests for production of relevant documents. By excluding relevant document custodians, relevant search terms and relevant time periods from its search, Hyatt has all but guaranteed that relevant responsive documents will go uncollected. Moreover, Hyatt's intention to withhold all documents from its production except for what it deems "smoking guns" would

- 12 -

deprive Mitchell of both direct and circumstantial evidence of Carbon Capital's interference.

Hyatt has no right to refuse to produce responsive documents merely because they are not direct

and unambiguous evidence of Carbon Capital's acts. Hyatt is the only source of evidence

reflecting oral communications between it and Carbon Capital or its agents. Hyatt's objections

would deny Mitchell the ability to examine all the responsive documents in order to evaluate the

qualitative weight of that evidence and to determine whether the documents would lead to the

discovery of admissible evidence through additional discovery requests. In sum, even though the

subpoenas as modified by Mitchell would impose no undue burden on Hyatt, Hyatt's objections

would unfairly prejudice Mitchell's ability to obtain discovery in support of its claims in the

dispute before the Southern District of New York.

Jonathan N. Francis

Sworn to before me
this _2nd_ day of June, 2008.

Notary Public

**ROBERT G. HYNES**
Notary Public, State of New York
No. 01HY4811268
Qualified in New York County
Commission Expires 02/09/2011

# EXHIBIT 1

## to the Declaration of Jonathan N. Francis

## Berke, Michael

| | |
|---|---|
| **From:** | David.Tarr@hyatt.com |
| **Sent:** | Monday, January 28, 2008 9:53 AM |
| **To:** | Guy Mitchell |
| **Cc:** | Leah A. Schleicher; Marc Sallette; Karrie Dowd; Berke, Michael |
| **Subject:** | Urgent |
| **Importance:** | High |

Dear Guy,
. I am about to get on a plane to LA and need to reach you. Heart on sleeve, I am emailing you to tell you that Hyatt needs until April 1 to close, not the end of February as I proposed last night. I am sorry about this. I know it must feel like I am jerking you around, but it is what it is. I will call you when we land, but need you to consider whether you can live with this. No chnge to hard date, only close date.

I have to instruct Leah to terminate before 5:00 eastern to protect our deposit in the event that this is unacceptable to you. If you can live with it, we need to get the amendment signed, accordingly. Please let us all know if you can accommodate us.

Again, I am very sorry to be acting in this manner. I am more troubled by it than you can imagine.

Yours,

David

1/28/2008

CONFIDENTIAL

RP 009807

# EXHIBIT 2
## to the Declaration of Jonathan N. Francis

**Transcript of January 28, 2008 David Tarr voicemail to Guy Mitchell**

Guy, it's David. I sent you an e-mail this morning because we're about to board a flight, but I wanted to try to speak to you live. Tom Pritzker feels that we need until April 1st to close. I can't even express to you how terrible I feel about jerking you around, as you clearly are, but that's the final word from the Chairman. April 1st closing date. No change to hard date. We may be delayed en route, so if Leah has to technically terminate the agreement, it's not because we don't intend to work towards a resolution with you, but -- read my email -- respond back to all of us including Leah. Let us know if you can live with what is now an 8 week delay. I completely understand if you can't. And I'm hoping that you can. And, again, my sincere apologies. I built my personal reputation on being credible and a straight dealer. I know it doesn't feel like that right now, but all I can do is assure you that these decisions are not being driven by me. And I do hope that we can reach an agreement. Again, sorry. And we'll reach out to you as soon as we land.

# EXHIBIT 3
## to the Declaration of Jonathan N. Francis

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------X
ROYAL PALM SENIOR INVESTORS LLC.,

                         Plaintiff(s),

        - against -                              08 Civ. 4319 (JES)
                                                 ORDER
CARBON CAPITAL II, INC.,
                         Defendant(s).
--------------------------------------X

        Counsel to all parties in the above-captioned action having
appeared before the Court for a Pre-Trial Conference on May 14,
2008, and plaintiff having sought a Preliminary Injunction against
defendant, and the Court having considered all matters raised, it
is

        ORDERED that, as discussed at the aforementioned Conference,
all discovery in the above-captioned action relating to plaintiff's
application for a Preliminary Injunction shall be completed on or
before June 11, 2008; and it is further

        ORDERED that plaintiff shall post a bond in the amount of
$5,000 on or before May 16, 2008 at 5:00 p.m.; and it is further

        ORDERED that all parties will maintain the status quo with
respect to operation of the Royal Palm Hotel pending a hearing on
plaintiff's application for a Preliminary Injunction; and it is
further

        ORDERED that a Hearing on plaintiff's application for a
Preliminary Injunction shall occur on June 11, 2008 at 12:00 p.m.
in Courtroom 14C, 500 Pearl Street.

Dated:    New York, New York
          May    15    , 2008

                                         _____
                                              John E. Sprizzo
                                         United States District Judge

# EXHIBIT 4
## to the Declaration of Jonathan N. Francis

Issued by the
# UNITED STATES DISTRICT COURT

NORTHERN     DISTRICT OF     ILLINOIS

.CARBON CAPITAL II, INC.
     v.
ROYAL PALM SENIOR INVESTORS, LLC and
GUY T. MITCHELL

**SUBPOENA IN A CIVIL CASE PENDING IN
THE SOUTHERN DISTRICT OF NEW
YORK**

08 Civ. 3660 (JES)

TO:    **Custodian of Records
Hyatt Corporation
71 South Wacker Drive
Chicago, Illinois 60606**

☐ YOU ARE COMMANDED to appear in the United States District Court at the place, date, and time specified below to testify in the above case.

| PLACE OF TESTIMONY | COURTROOM |
|---|---|
| | DATE AND TIME |

☐ YOU ARE COMMANDED to appear at the place, date, and time specified below to testify at the taking of a deposition in the above case.

| PLACE OF DEPOSITION | DATE AND TIME |
|---|---|
| | |

☒ YOU ARE COMMANDED to produce and permit inspection and copying of the following documents or objects at the place, date, and time specified below (list documents or objects):

     **See Schedule A.**

| 71 South Wacker Drive, Chicago, Illinois 60606 | DATE AND TIME
May 9, 2008 |
|---|---|

☐ YOU ARE COMMANDED to permit inspection of the following premises at the date and time specified below.:

| PREMISES | DATE AND TIME |
|---|---|
| | |

     Any organization not a party to this suit that is subpoenaed for the taking of a deposition shall designate one or more officers, directors, or managing agents, or other persons who consent to testify on its behalf, and may set forth, for each person designated, the matters on which the person will testify. Federal Rules of Civil Procedure, 30(b)(6).

| ISSUING OFFICER SIGNATURE AND TITLE (INDICATE IF ATTORNEY FOR PLAINTIFF OR DEFENDANT) | DATE |
|---|---|
| _(signature)_    Attorney for Defendants | April 28, 2008 |

| ISSUING OFFICER'S NAME, ADDRESS AND PHONE NUMBER | |
|---|---|
| Jonathan N. Francis      Arnold & Porter LLP
399 Park Avenue
New York, New York 10022 | (212) 715-1000 |

(See Rule 45, Federal Rules of Civil Procedure, Parts C & D on Reverse)

## PROOF OF SERVICE

| | DATE | PLACE |
|---|---|---|
| SERVED | | |

| | |
|---|---|
| SERVED ON (PRINT NAME) | MANAGER OF SERVICE |

| | |
|---|---|
| SERVED BY (PRINT NAME) | TITLE |

## DECLARATION OF SERVER

I declare under penalty of perjury under the laws of the United States of America that the foregoing information contained in the Proof of Service is true and correct

Executed on

| | |
|---|---|
| | SIGNATURE OF SERVER |
| | ADDRESS OF SERVER |

Rule 45, Federal Rules of Civil Procedure, Parts C & D:

(c) PROTECTION OF PERSONS SUBJECT TO SUBPOENAS.

(1) A party or an attorney responsible for the issuance and service of a subpoena shall take reasonable steps to avoid imposing undue burden or expense on a person subject to that subpoena. The court on behalf of which the subpoena was issued shall enforce this duty and impose upon the party or attorney in breach of this duty an appropriate sanction which may include, but is not limited to, lost earnings and reasonable attorney's fee.

(2) (A) A person commanded to produce and permit inspection and copying of designated books, papers, documents or tangible things, or inspection of premises need not appear in person at the place of production or inspection unless commanded to appear for deposition, hearing or trial.

(B) Subject to paragraph (d) (2) of this rule, a person commanded to produce and permit inspection and copying may, within 14 days after service of subpoena or before the time specified for compliance if such time is less than 14 days after service, serve upon the party or attorney designated in the subpoena written objection to inspection or copying of any or all of the designated materials or of the premises. If objection is made, the party serving the subpoena shall not be entitled to inspect and copy materials or inspect the premises except pursuant to an order of the court by which the subpoena was issued. If objection has been made, the party serving the subpoena may, upon notice to the person commanded to produce, move at any time for an order to compel the production. Such an order to compel production shall protect any person who is not a party or an officer of a party from significant expense resulting from the inspection and copying commanded.

(3) (A) On timely motion, the court by which a subpoena was issued shall quash or modify the subpoena if it

(i) fails to allow reasonable time for compliance;

(ii) requires a person who is not a party or an officer of a party to travel to a place more than 100 miles from the place where that person resides, is employed or regularly transacts business in

person, except that, subject to the provisions of clause (c)(3)(13)(111) of this rule, such a person may in order to attend trial be commanded to travel from any such place within the state in which the trial is held, or

(iii) requires disclosure of privileged or other protected matter and no exception or waiver applies, or

(iv) subjects a person to undue burden.

(B) If a subpoena

(i) requires disclosure of a trade secret or other confidential research, development, or commercial information, or

(ii) requires disclosure of an unretained expert's opinion or information not describing specific events or occurrences in dispute and resulting from the expert's study made not at the request of any party, or

(iii) requires a person who is not a party or an officer of a party to incur substantial expense to travel more than 100 miles to attend trial, The court may, to protect a person subject to or affected by the subpoena, quash or modify the subpoena, or, if the party in whose behalf the subpoena is issued shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship and assures that the person to whom the subpoena is addressed will be reasonably compensated, the court may order appearance or production only upon specified conditions.

(d) DUTIES IN RESPONDING TO SUBPOENA.

(1) A person responding to a subpoena to produce documents shall produce them as they are kept in the usual course of business or shall organize and label them to correspond with the categories in the demand.

(2) When information subject to a subpoena is withheld on a claim that it is privileged or subject to protection as trial preparation materials, the claim shall be made expressly and shall be supported by a description of the nature of the documents, communications, or things not produced that is sufficient to enable the demanding party to contest the claim.

## SCHEDULE A

## DEFINITIONS

A.      The term "Hyatt" refers to Hyatt Corporation and all of the current or former, parents, subsidiaries, controlled companies, successors-in-interest, affiliates or divisions thereof, and includes current or former directors, officers, members or other managers, employees, outside consultants, agents, counsel, accountants, representatives, auditors, investment advisors, and other persons affiliated with, under the control of, or acting or purporting to act on behalf of any predecessors, successors, parents, subsidiaries, affiliates or divisions thereof, or any otherwise related entities, including but not limited to Hyatt Equities LLC.

B.      The term Carbon Capital refers to itself and all of the current or former, parents, subsidiaries, controlled companies, successors-in-interest, affiliates or divisions thereof, and includes current or former directors, officers, members or other managers, employees, outside consultants, agents, counsel, accountants, representatives, auditors, investment advisors, and other persons affiliated with, under the control of, or acting or purporting to act on behalf of any predecessors, successors, parents, subsidiaries, affiliates or divisions thereof, or any otherwise related entities.

C.      The term "Royal Palm Hotel" refers to the Royal Pam Hotel Miami Beach.

D.      The term "Royal Palm" refers to defendant Royal Palm and all of the current or former, parents, subsidiaries, controlled companies, successors-in-interest, affiliates or divisions thereof, and includes current or former directors, officers, members or other managers, employees, outside consultants, agents, counsel, accountants, representatives, auditors, advisors, and other persons affiliated with, under the control of, or acting or purporting to act on behalf of

any predecessors, successors, parents, subsidiaries, affiliates or divisions thereof, or any otherwise related entities, including but not limited to Royal Palm Hotel Property LLC.

        E.     The term "Purchase and Sale Agreement" refers to the Purchase and Sale Agreement by and between Royal Palm Hotel Property, LLC and Hyatt Equities, L.L.C. dated on or about December 17, 2007.

        F.     The term "communication" includes, but is not limited to, any meeting, conversation, discussion, conference, correspondence, message, or other written, oral or electronic transmission of information whether an original, a draft, or a copy, whether stored in hard copy, electronically, or digitally, either orally or in writing, including correspondence, electronic mail, telexes, facsimile transmissions, telecopies, recordings in any medium of oral communication, telephone and message logs, notes, or memoranda relating to written or oral communications.

        G.     The term "document" includes, but is not limited to, paper, film, tape, slides, transparencies, diskettes, computer memory, or other material upon which verbal, graphic or pictorial information is written, printed, typed, drawn or reproduced in any fashion, including correspondence, electronic mail/messages and/or e-mail, electronically stored telephone messages and/or voice-mail, memoranda, notes, agreements, contracts, charts, and presentations (including presentations to the board of directors).

        H.     The term "concerning" includes, but is not limited to, relating to, referring to, reflecting, constituting, containing, or describing the matter discussed. The term includes, but is not limited to, documents underlying, supporting, necessary for the understanding of, now or previously attached or appended to, or used in the preparation of any document called for by each request.

I.      The terms "all," "each," "every," and "any" shall be construed as all and any.

J.      The connectives "and" and "or" shall be construed disjunctively or conjunctively as necessary to bring within the scope of the request all documents that might otherwise be construed to be outside of its scope.

K.      The term "including" means "including, but not limited to."

## INSTRUCTIONS

A.      This request shall be deemed continuing and any document requested herein that is presently unavailable but which becomes available to you or to any of your attorneys, agents or representatives up to the conclusion of the proceedings herein must be produced in a supplemental document production.

B.      The documents requested herein are to be produced as they are kept in the usual course of business or organized and labeled to correspond to the numbered paragraphs and/or categories of particular requests. If there are no documents responsive to a particular numbered paragraph and/or category, so state in writing.

C.      For each document responsive to this request withheld under a claim of privilege, the following information shall be provided:

(1)     the nature of the privilege (including work product) which is being claimed and, if applicable, the state rule or law governing such claim;

(2)     the identity of all persons who have or have had access, or purport to have or have had access, to said document;

(3)     the type of document;

(4)     the general subject matter of the document;

(5)     the date of the document; and

(6)     such other information as is sufficient to identify the document for a subpoena duces tecum, including, where appropriate, the document author(s), addressee(s), and where not apparent, the relationship between the author(s) and addressee(s).

D.     All documents produced in response to this request shall be provided in their entirety, notwithstanding the fact that portions thereof may contain information not requested. All interim as well as final versions of the document shall be produced, and all versions or copies that are not identical to the original or other produced copy of the document, whether due to handwritten notations, revisions or otherwise, shall be produced.

E.     If any request herein cannot be complied with in full, it shall be complied with to the extent possible with an explanation as to why full compliance is not possible.

## DOCUMENTS TO BE PRODUCED

1.     All communications between Hyatt and the Royal Palm Hotel, Royal Palm or Guy Mitchell since October 17, 2007 concerning the Royal Palm Hotel.

2.     All communications between Hyatt and Carbon Capital concerning defendants or the Royal Palm Hotel since October 17, 2007.

3.     All documents concerning the Royal Palm Hotel, Royal Palm or Guy Mitchell since October 17, 2007.

4.     All documents concerning the sale of the Royal Palm Hotel to Hyatt since October 17, 2007.

5.     All documents and communications concerning extension or amendment of the closing date under Section 9.1 of the Purchase and Sale Agreement.

6.     All documents and communications concerning amendment of the Purchase and Sale Agreement.

-4-

7.    All documents and communications concerning the letter from Leah A. Schleicher dated January 28, 2008 to Royal Palm Hotel Property LLC, First American Title Insurance Company and Akerman Senterfitt terminating the Purchase and Sale Agreement.

Issued by the

# UNITED STATES DISTRICT COURT

**NORTHERN**      **DISTRICT OF**      **ILLINOIS**

CARBON CAPITAL II, INC.
      v.
ROYAL PALM SENIOR INVESTORS, LLC and
GUY T. MITCHELL

**SUBPOENA IN A CIVIL CASE PENDING IN THE SOUTHERN DISTRICT OF NEW YORK**

08 Civ. 3660 (JES)

TO:   **Custodian of Records**
     **Hyatt Equities, L.L.C.**
     **71 South Wacker Drive**
     **Chicago, Illinois 60606**

☐   YOU ARE COMMANDED to appear in the United States District Court at the place, date, and time specified below to testify in the above case.

| PLACE OF TESTIMONY | COURTROOM |
|---|---|
|  | DATE AND TIME |

☐   YOU ARE COMMANDED to appear at the place, date, and time specified below to testify at the taking of a deposition in the above case.

| PLACE OF DEPOSITION | DATE AND TIME |
|---|---|
|  |  |

☒   YOU ARE COMMANDED to produce and permit inspection and copying of the following documents or objects at the place, date, and time specified below (list documents or objects):

     See Schedule A.

| 71 South Wacker Drive, Chicago, Illinois 60606 | DATE AND TIME<br>May 9, 2008 |
|---|---|

☐   YOU ARE COMMANDED to permit inspection of the following premises at the date and time specified below.:

| PREMISES | DATE AND TIME |
|---|---|

     Any organization not a party to this suit that is subpoenaed for the taking of a deposition shall designate one or more officers, directors, or managing agents, or other persons who consent to testify on its behalf, and may set forth, for each person designated, the matters on which the person will testify. Federal Rules of Civil Procedure, 30(b)(6).

| ISSUING OFFICER SIGNATURE AND TITLE (INDICATE IF ATTORNEY FOR PLAINTIFF OR DEFENDANT)<br><br>Attorney for Defendants | DATE<br>April 28, 2008 |
|---|---|
| ISSUING OFFICER'S NAME, ADDRESS AND PHONE NUMBER<br>Jonathan N. Francis      Arnold & Porter LLP<br>399 Park Avenue<br>New York, New York 10022 | (212) 715-1000 |

(See Rule 45, Federal Rules of Civil Procedure, Parts C & D on Reverse)

## PROOF OF SERVICE

|  | DATE | PLACE |
|---|---|---|
| SERVED | | |

| SERVED ON (PRINT NAME) | MANAGER OF SERVICE |
|---|---|

| SERVED BY (PRINT NAME) | TITLE |
|---|---|

## DECLARATION OF SERVER

I declare under penalty of perjury under the laws of the United States of America that the foregoing information contained in the Proof of Service is true and correct

Executed on

SIGNATURE OF SERVER

ADDRESS OF SERVER

Rule 45, Federal Rules of Civil Procedure, Parts C & D:

(c) PROTECTION OF PERSONS SUBJECT TO SUBPOENAS.

(1) A party or an attorney responsible for the issuance and service of a subpoena shall take reasonable steps to avoid imposing undue burden or expense on a person subject to that subpoena. The court on behalf of which the subpoena was issued shall enforce this duty and impose upon the party or attorney in breach of this duty an appropriate sanction which may include, but is not limited to, lost earnings and reasonable attorney's fee.

(2) (A) A person commanded to produce and permit inspection and copying of designated books, papers, documents or tangible things, or inspection of premises need not appear in person at the place of production or inspection unless commanded to appear for deposition, hearing or trial.

(B) Subject to paragraph (d) (2) of this rule, a person commanded to produce and permit inspection and copying may, within 14 days after service of subpoena or before the time specified for compliance if such time is less than 14 days after service, serve upon the party or attorney designated in the subpoena written objection to inspection or copying of any or all of the designated materials or of the premises. If objection is made, the party serving the subpoena shall not be entitled to inspect and copy materials or inspect the premises except pursuant to an order of the court by which the subpoena was issued. If objection has been made, the party serving the subpoena may, upon notice to the person commanded to produce, move at any time for an order to compel the production. Such an order to compel production shall protect any person who is not a party or an officer of a party from significant expense resulting from the inspection and copying commanded.

(3) (A) On timely motion, the court by which a subpoena was issued shall quash or modify the subpoena if it

(i) fails to allow reasonable time for compliance;

(ii) requires a person who is not a party or an officer of a party to travel to a place more than 100 miles from the place where that person resides, is employed or regularly transacts business in

person, except that, subject to the provisions of clause (c)(3)(13)(11) of this rule, such a person may in order to attend trial be commanded to travel from any such place within the state in which the trial is held, or

(iii) requires disclosure of privileged or other protected matter and no exception or waiver applies, or

(iv) subjects a person to undue burden.

(B) If a subpoena

(i) requires disclosure of a trade secret or other confidential research, development, or commercial information, or

(ii) requires disclosure of an unretained expert's opinion or information not describing specific events or occurrences in dispute and resulting from the expert's study made not at the request of any party, or

(iii) requires a person who is not a party or an officer of a party to incur substantial expense to travel more than 100 miles to attend trial, the court may, to protect a person subject to or affected by the subpoena, quash or modify the subpoena, or, if the party in whose behalf the subpoena is issued shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship and assures that the person to whom the subpoena is addressed will be reasonably compensated, the court may order appearance or production only upon specified conditions.

(d) DUTIES IN RESPONDING TO SUBPOENA.

(1) A person responding to a subpoena to produce documents shall produce them as they are kept in the usual course of business or shall organize and label them to correspond with the categories in the demand.

(2) When information subject to a subpoena is withheld on a claim that it is privileged or subject to protection as trial preparation materials, the claim shall be made expressly and shall be supported by a description of the nature of the documents, communications, or things not produced that is sufficient to enable the demanding party to contest the claim.

## SCHEDULE A

## DEFINITIONS

A.   The term "Hyatt Equities" refers to Hyatt Equities, L.L.C. and all of the current or former, parents, subsidiaries, controlled companies, successors-in-interest, affiliates or divisions thereof, and includes current or former directors, officers, members or other managers, employees, outside consultants, agents, counsel, accountants, representatives, auditors, investment advisors, and other persons affiliated with, under the control of, or acting or purporting to act on behalf of any predecessors, successors, parents, subsidiaries, affiliates or divisions thereof, or any otherwise related entities, including but not limited to Hyatt Corporation.

B.   The term Carbon Capital refers to itself and all of the current or former, parents, subsidiaries, controlled companies, successors-in-interest, affiliates or divisions thereof, and includes current or former directors, officers, members or other managers, employees, outside consultants, agents, counsel, accountants, representatives, auditors, investment advisors, and other persons affiliated with, under the control of, or acting or purporting to act on behalf of any predecessors, successors, parents, subsidiaries, affiliates or divisions thereof, or any otherwise related entities.

C.   The term "Royal Palm Hotel" refers to the Royal Pam Hotel Miami Beach.

D.   The term "Royal Palm" refers to defendant Royal Palm and all of the current or former, parents, subsidiaries, controlled companies, successors-in-interest, affiliates or divisions thereof, and includes current or former directors, officers, members or other managers, employees, outside consultants, agents, counsel, accountants, representatives, auditors, advisors, and other persons affiliated with, under the control of, or acting or purporting to act on behalf of

any predecessors, successors, parents, subsidiaries, affiliates or divisions thereof, or any otherwise related entities, including but not limited to Royal Palm Hotel Property LLC.

        E.     The term "Purchase and Sale Agreement" refers to the Purchase and Sale Agreement by and between Royal Palm Hotel Property, LLC and Hyatt Equities dated on or about December 17, 2007.

        F.     The term "communication" includes, but is not limited to, any meeting, conversation, discussion, conference, correspondence, message, or other written, oral or electronic transmission of information whether an original, a draft, or a copy, whether stored in hard copy, electronically, or digitally, either orally or in writing, including correspondence, electronic mail, telexes, facsimile transmissions, telecopies, recordings in any medium of oral communication, telephone and message logs, notes, or memoranda relating to written or oral communications.

        G.     The term "document" includes, but is not limited to, paper, film, tape, slides, transparencies, diskettes, computer memory, or other material upon which verbal, graphic or pictorial information is written, printed, typed, drawn or reproduced in any fashion, including correspondence, electronic mail/messages and/or e-mail, electronically stored telephone messages and/or voice-mail, memoranda, notes, agreements, contracts, charts, and presentations (including presentations to the board of directors).

        H.     The term "concerning" includes, but is not limited to, relating to, referring to, reflecting, constituting, containing, or describing the matter discussed. The term includes, but is not limited to, documents underlying, supporting, necessary for the understanding of, now or previously attached or appended to, or used in the preparation of any document called for by each request.

I.    The terms "all," "each," "every," and "any" shall be construed as all and any.

J.    The connectives "and" and "or" shall be construed disjunctively or conjunctively as necessary to bring within the scope of the request all documents that might otherwise be construed to be outside of its scope.

K.    The term "including" means "including, but not limited to."

## INSTRUCTIONS

A.    This request shall be deemed continuing and any document requested herein that is presently unavailable but which becomes available to you or to any of your attorneys, agents or representatives up to the conclusion of the proceedings herein must be produced in a supplemental document production.

B.    The documents requested herein are to be produced as they are kept in the usual course of business or organized and labeled to correspond to the numbered paragraphs and/or categories of particular requests.  If there are no documents responsive to a particular numbered paragraph and/or category, so state in writing.

C.    For each document responsive to this request withheld under a claim of privilege, the following information shall be provided:

(1)    the nature of the privilege (including work product) which is being claimed and, if applicable, the state rule or law governing such claim;

(2)    the identity of all persons who have or have had access, or purport to have or have had access, to said document;

(3)    the type of document;

(4)    the general subject matter of the document;

(5)    the date of the document; and

(6)    such other information as is sufficient to identify the document for a subpoena duces tecum, including, where appropriate, the document author(s), addressee(s), and where not apparent, the relationship between the author(s) and addressee(s).

D.    All documents produced in response to this request shall be provided in their entirety, notwithstanding the fact that portions thereof may contain information not requested. All interim as well as final versions of the document shall be produced, and all versions or copies that are not identical to the original or other produced copy of the document, whether due to handwritten notations, revisions or otherwise, shall be produced.

E.    If any request herein cannot be complied with in full, it shall be complied with to the extent possible with an explanation as to why full compliance is not possible.

## DOCUMENTS TO BE PRODUCED

1.    All communications between Hyatt Equities and the Royal Palm Hotel, Royal Palm or Guy Mitchell since October 17, 2007 concerning the Royal Palm Hotel.

2.    All communications between Hyatt Equities and Carbon Capital concerning defendants or the Royal Palm Hotel since October 17, 2007.

3.    All documents concerning the Royal Palm Hotel, Royal Palm or Guy Mitchell since October 17, 2007.

4.    All documents concerning the sale of the Royal Palm Hotel to Hyatt Equities since October 17, 2007.

5.    All documents and communications concerning extension or amendment of the closing date under Section 9.1 of the Purchase and Sale Agreement.

6.    All documents and communications concerning amendment of the Purchase and Sale Agreement.

-4-

7.    All documents and communications concerning the letter from Leah A. Schleicher dated January 28, 2008 to Royal Palm Hotel Property LLC, First American Title Insurance Company and Akerman Senterfitt terminating the Purchase and Sale Agreement.

# EXHIBIT 5
## to the Declaration of Jonathan N. Francis

Jonathan
Francis/Atty/NY/ArnoldAndPo
rter
NY - 3502  212-715-1719
05/01/2008 04:17 PM

To  margaret.jones@hyatt.com

cc  Peter Haveles/Atty/NY/ArnoldAndPorter@APORTER

bcc

Subject  Carbon Capital v. Royal Palm

Margaret,

Thank you for calling me about our subpoenas on Hyatt Corporation and Hyatt Equities. As you requested, attached is a copy of the complaint filed by Carbon Capital against our clients.

We expect that one of the primary issues in the case will be the circumstances surrounding Hyatt's decision to terminate its acquisition of the Royal Palm Hotel. During our call, you mentioned that 44 people at Hyatt were involved in that transaction. Please send us a list identifying those people and we will consider which we regard as a priority. Then we can confer tomorrow about whether we can agree to a narrowed scope for our subpoenas.

Regards,

Jonathan

Summons and Complaint.pdf

# EXHIBIT 6
## to the Declaration of Jonathan N. Francis

# ARNOLD & PORTER LLP

Jonathan N. Francis
Jonathan.Francis@aporter.com

212.715.1719
212.715.1399 Fax

399 Park Avenue
New York, NY 10022-4690

May 6, 2008

**VIA E-MAIL AND FEDERAL EXPRESS**

Margaret Jones, Esq.
Hyatt Corporation
71 South Wacker Drive
Chicago, Illinois 60606

> Re:     Carbon Capital II, Inc. v. Royal Palm Senior Investors, LLC and Guy T.
>         Mitchell

Dear Margaret:

I write to confirm the substance  our various communications in reference to the subpoenas duces tecum that Royal Palm Senior Investors, LLC and Guy T. Mitchell's (collectively, "Royal Palm") served on your clients Hyatt Corporation and Hyatt Equities, L.L.C. (collectively, "Hyatt") in the above-mentioned case pending in the Southern District of New York.

Royal Palm served its subpoenas on April 29, 2008, returnable this Friday, May 9, 2008. You called me on May 1 to inquire as to reason for and the scope of Royal Palm's document requests. I summarized the status of the pending litigation and informed you of the importance of Hyatt's compliance by May 9, in light of a hearing scheduled for May 13. During our conversation, you told me that approximately 44 Hyatt employees were custodians of potentially responsive documents.

I followed our call with an email dated May 1, in which I transmitted a copy of the plaintiff's Complaint and suggested that you provide us a list of these names so that we could work with you to narrow Hyatt's search for documents. You never responded to this email.

Therefore, I took the initiative to call you this morning to renew my offer to work with you on Hyatt's document search. You told me that your prior understanding was incorrect, and that there are in fact 70 Hyatt employees with potentially responsive documents. I repeated my suggestion that you provide me with these names so that Hyatt's search would include only relevant custodians. You, however, declined my offer. Instead, you denied the relevance of or Royal Palm's need for any documents from Hyatt,

# ARNOLD & PORTER LLP

Margaret Jones, Esq.
May 6, 2008
Page 2

and informed me for the first time that Hyatt has retained outside counsel. In response to my offer to contact Hyatt's counsel, you asked that I wait for his call.

Hyatt's document production is due in three days. Your apparent unilateral determination that our document requests are overbroad and irrelevant, and your repeated refusal of my offers to work with you to focus Hyatt's search to relevant custodians, leave us with no comfort or assurance that Hyatt plans to timely comply with Royal Palm's subpoenas. Hyatt has had sufficient time to begin its search and produce documents on May 9. There is no justification for Hyatt's delay in this matter, particularly since I informed you last week that the Court had scheduled an evidentiary hearing on May 13, at which Hyatt's documents might be crucial evidence.

Please have Hyatt's outside counsel immediately contact either myself or Peter Haveles at 212-715-1118 to discuss Hyatt's production.

Sincerely,

Jonathan N. Francis

# EXHIBIT 7
## to the Declaration of Jonathan N. Francis

# THE LAW OFFICE OF DARRELL J. GRAHAM, LLC

## 53 WEST JACKSON BOULEVARD, SUITE 1334
## CHICAGO, ILLINOIS 60604

**By Email To jonathan.francis@aporter.com**
 **& Federal Express**

May 7, 2008

Mr. Jonathan Francis
Arnold & Porter LLP
399 Park Avenue
New York, NY 10022-4690

Re:  Hyatt/Subpoenas—Objections of Hyatt Equities LLC and Hyatt Corporation

Dear Mr. Francis:        .

I represent both Hyatt Equities and Hyatt Corporation in the above referenced matter.  On or about April 29, 2008, your firm served on Hyatt Corporation and Hyatt Equities (collectively "Hyatt") subpoenas in the case of *Carbon Capital II, Inc. v. Royal Palm Senior Investors, LLC and Guy T. Mitchell*, which is pending in the Southern District of New York.  Consider this letter a formal objection under Fed. R. Civ. P. 45 to production of any documents or other information pursuant to those subpoenas.  We explain our objections below, but first we respond to your letter to Margaret Jones of May 6, 2008.

### May 6, 2008 Letter

You suggest in your letter that Hyatt has somehow been tardy in responding to your subpoenas.  First, Hyatt is responding before both the 14 days provided in Rule 45(c) and the time for Hyatt's response that you set in the subpoenas.  Clearly Hyatt is not in any way late.

Second, on May 1, just two days after they were served on Hyatt, Ms. Jones called you to discuss the subpoenas.  Ms. Jones explained to you her concerns about the nature and scope of the subpoenas.  In particular, she told you that the scope of the subpoenas was burdensome.  More importantly, she explained that she could not understand how the information requested could be relevant to any issue in your case because of the nature of the agreement between the relevant Hyatt entities and your client.  She then put the question to you and you said you would have to ask others on the case in order to respond to her question.  You told her that your partner would call her the next day to discuss that issue.  You then confirmed that someone would call her in an email dated May 1.  No one called Ms. Jones on May 2.  Indeed, no one called Ms. Jones until your call on May 6,

## THE LAW OFFICE OF DARRELL J. GRAHAM, LLC

followed by your May 6 letter. Consequently, your suggestion that Hyatt has somehow unreasonably delayed responding seems extreme.

Objections to the Subpoenas

Your subpoenas effectively seek all documents relating to Hyatt's evaluation of and negotiation for Royal Palm Hotel. First, the records requested are voluminous and burdensome for Hyatt to review, collect and produce, as Ms. Jones previously explained. Second, some of the documents you are requesting are communications between Hyatt and your client. You should already have those documents and there is no basis for forcing on a non-party the burden and cost of collecting documents that you already have. Third, your request asks Hyatt to produce documents that contain confidential research, development or commercial information, to which you are not entitled. Fourth, as Ms. Jones explained, we do not see how the documents you have requested are relevant to or likely to lead to the discovery of admissible evidence based on the agreements between your client and Hyatt. Finally, among the documents you have requested are documents that fall under either or both the attorney-client-privilege or attorney-work-product rules. For all of these reasons, Hyatt objects to the subpoenas at issue under Rule 45.

I am more than happy to discuss these objections with you, especially if you are willing to greatly narrow the scope of the subpoenas to documents that are likely to lead to the discovery of admissible evidence. I look forward to working with you on this matter.

Very truly yours,

Darrell J. Graham

cc: Margaret Jones

Phone: 312-922-4533 • Fax: 312-922-4757 • Email: dgraham@djgrahamlaw.com

# EXHIBIT 8
# to the Declaration of Jonathan N. Francis

Issued by the
# UNITED STATES DISTRICT COURT

| NORTHERN | DISTRICT OF | ILLINOIS |
|---|---|---|

GUY T. MITCHELL

v.

CARBON CAPITAL II, INC.

**SUBPOENA IN A CIVIL CASE PENDING IN THE SOUTHERN DISTRICT OF NEW YORK**

08 Civ. 4319

TO:    **Custodian of Records**
**Hyatt Corporation**
71 South Wacker Drive
Chicago, Illinois 60606

☐    YOU ARE COMMANDED to appear in the United States District Court at the place, date, and time specified below to testify in the above case.

| PLACE OF TESTIMONY | COURTROOM |
|---|---|
| | DATE AND TIME |

☐    YOU ARE COMMANDED to appear at the place, date, and time specified below to testify at the taking of a deposition in the above case.

| PLACE OF DEPOSITION | DATE AND TIME |
|---|---|

☒    YOU ARE COMMANDED to produce and permit inspection and copying of the following documents or objects at the place, date, and time specified below (list documents or objects):

    **See Schedule A.**

| 71 South Wacker Drive, Chicago, Illinois 60606 | DATE AND TIME<br>May 23, 2008 |
|---|---|

☐    YOU ARE COMMANDED to permit inspection of the following premises at the date and time specified below.:

| PREMISES | DATE AND TIME |
|---|---|

      Any organization not a party to this suit that is subpoenaed for the taking of a deposition shall designate one or more officers, directors, or managing agents, or other persons who consent to testify on its behalf, and may set forth, for each person designated, the matters on which the person will testify. Federal Rules of Civil Procedure, 30(b)(6).

| ISSUING OFFICER SIGNATURE AND TITLE (INDICATE IF ATTORNEY FOR PLAINTIFF OR DEFENDANT) | DATE |
|---|---|
| _[signature]_    Attorney for Plaintiff | May 15, 2008 |

| ISSUING OFFICER'S NAME, ADDRESS AND PHONE NUMBER | |
|---|---|
| Jonathan N. Francis    Arnold & Porter LLP<br>399 Park Avenue<br>New York, New York 10022 | (212) 715-1000 |

(See Rule 45, Federal Rules of Civil Procedure, Parts C & D on Reverse)

## PROOF OF SERVICE

| | DATE | PLACE |
|---|---|---|
| SERVED | | |

| SERVED ON (PRINT NAME) | MANAGER OF SERVICE |
|---|---|

| SERVED BY (PRINT NAME) | TITLE |
|---|---|

## DECLARATION OF SERVER

I declare under penalty of perjury under the laws of the United States of America that the foregoing information contained in the Proof of Service is true and correct

Executed on

| | |
|---|---|
| | SIGNATURE OF SERVER |
| | ADDRESS OF SERVER |

Federal Rule of Civil Procedure 45 (c), (d), and (e), as amended on December 1, 2007:

(c) PROTECTING A PERSON SUBJECT TO A SUBPOENA.
(1) Avoiding Undue Burden or Expense; Sanctions. A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The issuing court must enforce this duty and impose an appropriate sanction — which may include lost earnings and reasonable attorney's fees — on a party or attorney who fails to comply.
(2) Command to Produce Materials or Permit Inspection.
(A) Appearance Not Required. A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.
(B) Objections. A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing or sampling any or all of the materials or to inspecting the premises — or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:
(i) At any time, on notice to the commanded person, the serving party may move the issuing court for an order compelling production or inspection.
(ii) These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.
(3) Quashing or Modifying a Subpoena.
(A) When Required. On timely motion, the issuing court must quash or modify a subpoena that:
(i) fails to allow a reasonable time to comply;
(ii) requires a person who is neither a party nor a party's officer to travel more than 100 miles from where that person resides, is employed, or regularly transacts business in person — except that, subject to Rule 45(c)(3)(B)(iii), the person may be commanded to attend a trial by traveling from any such place within the state where the trial is held;
(iii) requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
(iv) subjects a person to undue burden.
(B) When Permitted. To protect a person subject to or affected by a subpoena, the issuing court may, on motion, quash or modify the subpoena if it requires:
(i) disclosing a trade secret or other confidential research, development, or commercial information;
(ii) disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party; or
(iii) a person who is neither a party nor a party's officer to incur substantial expense to travel more than 100 miles to attend trial.
(C) Specifying Conditions as an Alternative. In the circumstances described in Rule 45(c)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or

production under specified conditions if the serving party:
(i) shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and
(ii) ensures that the subpoenaed person will be reasonably compensated.
(d) DUTIES IN RESPONDING TO A SUBPOENA.
(1) Producing Documents or Electronically Stored Information. These procedures apply to producing documents or electronically stored information:
(A) Documents. A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.
(B) Form for Producing Electronically Stored Information Not Specified. If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.
(C) Electronically Stored Information Produced in Only One Form. The person responding need not produce the same electronically stored information in more than one form.
(D) Inaccessible Electronically Stored Information. The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.
(2) Claiming Privilege or Protection.
(A) Information Withheld. A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:
(i) expressly make the claim; and
(ii) describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.
(B) Information Produced. If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information to the court under seal for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.
(e) CONTEMPT.
The issuing court may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena. A nonparty's failure to obey must be excused if the subpoena purports to require the nonparty to attend or produce at a place outside the limits of Rule 45(c)(3)(A)(ii).

## SCHEDULE A

## DEFINITIONS

A.     The term "Hyatt" refers to Hyatt Corporation and all of the current or former, parents, subsidiaries, controlled companies, successors-in-interest, affiliates or divisions thereof, and includes current or former directors, officers, members or other managers, employees, outside consultants, agents, counsel, accountants, representatives, auditors, investment advisors, and other persons affiliated with, under the control of, or acting or purporting to act on behalf of any predecessors, successors, parents, subsidiaries, affiliates or divisions thereof, or any otherwise related entities, including but not limited to Hyatt Equities LLC.

B.     The term "Carbon Capital" refers to defendant Carbon Capital II, Inc. and all of the current or former, parents, subsidiaries, controlled companies, successors-in-interest, affiliates or divisions thereof, and includes current or former directors, officers, members or other managers, employees, outside consultants, agents, counsel, accountants, representatives, auditors, investment advisors, and other persons affiliated with, under the control of, or acting or purporting to act on behalf of any predecessors, successors, parents, subsidiaries, affiliates or divisions thereof, or any otherwise related entities.

C.     The term "Royal Palm Hotel" refers to the Royal Pam Hotel Miami Beach.

D.     The term "Royal Palm" refers to Royal Palm Senior Investors, LLC and all of the current or former, parents, subsidiaries, controlled companies, successors-in-interest, affiliates or divisions thereof, and includes current or former directors, officers, members or other managers, employees, outside consultants, agents, counsel, accountants, representatives, auditors, advisors, and other persons affiliated with, under the control of, or acting or purporting

to act on behalf of any predecessors, successors, parents, subsidiaries, affiliates or divisions thereof, or any otherwise related entities, including but not limited to Royal Palm Hotel Property LLC.

       E.     The term "Purchase and Sale Agreement" refers to the Purchase and Sale Agreement by and between Royal Palm Hotel Property, LLC and Hyatt Equities, L.L.C. dated on or about December 17, 2007.

       F.     The term "communication" includes, but is not limited to, any meeting, conversation, discussion, conference, correspondence, message, or other written, oral or electronic transmission of information whether an original, a draft, or a copy, whether stored in hard copy, electronically, or digitally, either orally or in writing, including correspondence, electronic mail, telexes, facsimile transmissions, telecopies, recordings in any medium of oral communication, telephone and message logs, notes, or memoranda relating to written or oral communications.

       G.     The term "document" includes, but is not limited to, paper, film, tape, slides, transparencies, diskettes, computer memory, or other material upon which verbal, graphic or pictorial information is written, printed, typed, drawn or reproduced in any fashion, including correspondence, electronic mail/messages and/or e-mail, electronically stored telephone messages and/or voice-mail, memoranda, notes, agreements, contracts, charts, and presentations (including presentations to the board of directors).

       H.     The term "concerning" includes, but is not limited to, relating to, referring to, reflecting, constituting, containing, or describing the matter discussed. The term includes, but is not limited to, documents underlying, supporting, necessary for the understanding of, now or previously attached or appended to, or used in the preparation of any document called for by each request.

-2-

I.     The terms "all," "each," "every," and "any" shall be construed as all and any.

J.     The connectives "and" and "or" shall be construed disjunctively or conjunctively as necessary to bring within the scope of the request all documents that might otherwise be construed to be outside of its scope.

K.     The term "including" means "including, but not limited to."

<u>INSTRUCTIONS</u>

A.     This request shall be deemed continuing and any document requested herein that is presently unavailable but which becomes available to you or to any of your attorneys, agents or representatives up to the conclusion of the proceedings herein must be produced in a supplemental document production.

B.     The documents requested herein are to be produced as they are kept in the usual course of business or organized and labeled to correspond to the numbered paragraphs and/or categories of particular requests.  If there are no documents responsive to a particular numbered paragraph and/or category, so state in writing.

C.     For each document responsive to this request withheld under a claim of privilege, the following information shall be provided:

(1)     the nature of the privilege (including work product) which is being claimed and, if applicable, the state rule or law governing such claim;

(2)     the identity of all persons who have or have had access, or purport to have or have had access, to said document;

(3)     the type of document;

(4)     the general subject matter of the document;

(5)     the date of the document; and

(6)    such other information as is sufficient to identify the document for a subpoena duces tecum, including, where appropriate, the document author(s), addressee(s), and where not apparent, the relationship between the author(s) and addressee(s).

D.    All documents produced in response to this request shall be provided in their entirety, notwithstanding the fact that portions thereof may contain information not requested. All interim as well as final versions of the document shall be produced, and all versions or copies that are not identical to the original or other produced copy of the document, whether due to handwritten notations, revisions or otherwise, shall be produced.

E.    If any request herein cannot be complied with in full, it shall be complied with to the extent possible with an explanation as to why full compliance is not possible.

## DOCUMENTS TO BE PRODUCED

1.    All communications between Hyatt and the Royal Palm Hotel, Royal Palm or Guy T. Mitchell since October 17, 2007 concerning Hyatt's acquisition of the Royal Palm Hotel.

2.    All communications between Hyatt and Carbon Capital concerning Royal Palm, Guy T. Mitchell or the Royal Palm Hotel since October 17, 2007.

3.    All documents concerning the Royal Palm Hotel, Royal Palm or Guy T. Mitchell since October 17, 2007.

4.    All documents concerning the acquisition of the Royal Palm Hotel by Hyatt since October 17, 2007.

5.    All documents and communications concerning extension or amendment of the closing date under Section 9.1 of the Purchase and Sale Agreement.

6.    All documents and communications concerning amendment of the Purchase and Sale Agreement.

- 4 -

.

       7.     All documents and communications concerning the letter from Leah A. Schleicher dated January 28, 2008 to Royal Palm Hotel Property LLC, First American Title Insurance Company and Akerman Senterfitt terminating the Purchase and Sale Agreement.

.

Issued by the

# UNITED STATES DISTRICT COURT

<u>NORTHERN</u>  **DISTRICT OF**  <u>ILLINOIS</u>

GUY T. MITCHELL

v.

**SUBPOENA IN A CIVIL CASE PENDING IN THE SOUTHERN DISTRICT OF NEW YORK**

CARBON CAPITAL II, INC.

08 Civ. 4319

TO:   **Custodian of Records**
      **Hyatt Equities, L.L.C.**
      **71 South Wacker Drive**
      **Chicago, Illinois 60606**

☐   YOU ARE COMMANDED to appear in the United States District Court at the place, date, and time specified below to testify in the above case.

| PLACE OF TESTIMONY | COURTROOM |
|---|---|
|  | DATE AND TIME |

☐   YOU ARE COMMANDED to appear at the place, date, and time specified below to testify at the taking of a deposition in the above case.

| PLACE OF DEPOSITION | DATE AND TIME |
|---|---|
|  |  |

☒   YOU ARE COMMANDED to produce and permit inspection and copying of the following documents or objects at the place, date, and time specified below (list documents or objects):

      See Schedule A.

| 71 South Wacker Drive, Chicago, Illinois 60606 | DATE AND TIME<br>May 23, 2008 |
|---|---|

☐   YOU ARE COMMANDED to permit inspection of the following premises at the date and time specified below.:

| PREMISES | DATE AND TIME |
|---|---|
|  |  |

      Any organization not a party to this suit that is subpoenaed for the taking of a deposition shall designate one or more officers, directors, or managing agents, or other persons who consent to testify on its behalf, and may set forth, for each person designated, the matters on which the person will testify. Federal Rules of Civil Procedure, 30(b)(6).

| ISSUING OFFICER SIGNATURE AND TITLE (INDICATE IF ATTORNEY FOR PLAINTIFF OR DEFENDANT) | DATE |
|---|---|
| [signature]    Attorney for Plaintiff | May 15, 2008 |

| ISSUING OFFICER'S NAME, ADDRESS AND PHONE NUMBER | |
|---|---|
| Jonathan N. Francis        Arnold & Porter LLP<br>399 Park Avenue<br>New York, New York 10022 | (212) 715-1000 |

(See Rule 45, Federal Rules of Civil Procedure, Parts C & D on Reverse)

## PROOF OF SERVICE

| | DATE | PLACE |
|---|---|---|
| SERVED | | |

| SERVED ON (PRINT NAME) | MANAGER OF SERVICE |
|---|---|

| SERVED BY (PRINT NAME) | TITLE |
|---|---|

## DECLARATION OF SERVER

I declare under penalty of perjury under the laws of the United States of America that the foregoing information contained in the Proof of Service is true and correct

Executed on _____

SIGNATURE OF SERVER

ADDRESS OF SERVER

Federal Rule of Civil Procedure 45 (c), (d), and (e), as amended on December 1, 2007:

(c) PROTECTING A PERSON SUBJECT TO A SUBPOENA.
(1) Avoiding Undue Burden or Expense; Sanctions. A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The issuing court must enforce this duty and impose an appropriate sanction — which may include lost earnings and reasonable attorney's fees — on a party or attorney who fails to comply.
(2) Command to Produce Materials or Permit Inspection.
(A) Appearance Not Required. A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.
(B) Objections. A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing or sampling any or all of the materials or to inspecting the premises — or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:
(i) At any time, on notice to the commanded person, the serving party may move the issuing court for an order compelling production or inspection.
(ii) These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.
(3) Quashing or Modifying a Subpoena.
(A) When Required. On timely motion, the issuing court must quash or modify a subpoena that:
(i) fails to allow a reasonable time to comply;
(ii) requires a person who is neither a party nor a party's officer to travel more than 100 miles from where that person resides, is employed, or regularly transacts business in person — except that, subject to Rule 45(c)(3)(B)(iii), the person may be commanded to attend a trial by traveling from any such place within the state where the trial is held;
(iii) requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
(iv) subjects a person to undue burden.
(B) When Permitted. To protect a person subject to or affected by a subpoena, the issuing court may, on motion, quash or modify the subpoena if it requires:
(i) disclosing a trade secret or other confidential research, development, or commercial information;
(ii) disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party; or
(iii) a person who is neither a party nor a party's officer to incur substantial expense to travel more than 100 miles to attend trial
(C) Specifying Conditions as an Alternative. In the circumstances described in Rule 45(c)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or

production under specified conditions if the serving party:
(i) shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and
(ii) ensures that the subpoenaed person will be reasonably compensated.
(d) DUTIES IN RESPONDING TO A SUBPOENA.
(1) Producing Documents or Electronically Stored Information. These procedures apply to producing documents or electronically stored information:
(A) Documents. A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.
(B) Form for Producing Electronically Stored Information Not Specified. If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.
(C) Electronically Stored Information Produced in Only One Form. The person responding need not produce the same electronically stored information in more than one form.
(D) Inaccessible Electronically Stored Information. The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.
(2) Claiming Privilege or Protection.
(A) Information Withheld. A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:
(i) expressly make the claim; and
(ii) describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.
(B) Information Produced. If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information to the court under seal for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.
(e) CONTEMPT.
The issuing court may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena. A nonparty's failure to obey must be excused if the subpoena purports to require the nonparty to attend or produce at a place outside the limits of Rule 45(c)(3)(A)(ii).

## SCHEDULE A

## DEFINITIONS

A.    The term "Hyatt Equities" refers to Hyatt Equities, L.L.C. and all of the current or former, parents, subsidiaries, controlled companies, successors-in-interest, affiliates or divisions thereof, and includes current or former directors, officers, members or other managers, employees, outside consultants, agents, counsel, accountants, representatives, auditors, investment advisors, and other persons affiliated with, under the control of, or acting or purporting to act on behalf of any predecessors, successors, parents, subsidiaries, affiliates or divisions thereof, or any otherwise related entities, including but not limited to Hyatt Corporation.

B.    The term "Carbon Capital" refers to defendant Carbon Capital II, Inc. and all of the current or former, parents, subsidiaries, controlled companies, successors-in-interest, affiliates or divisions thereof, and includes current or former directors, officers, members or other managers, employees, outside consultants, agents, counsel, accountants, representatives, auditors, investment advisors, and other persons affiliated with, under the control of, or acting or purporting to act on behalf of any predecessors, successors, parents, subsidiaries, affiliates or divisions thereof, or any otherwise related entities.

C.    The term "Royal Palm Hotel" refers to the Royal Pam Hotel Miami Beach.

D.    The term "Royal Palm" refers to plaintiff Royal Palm Senior Investors, LLC and all of the current or former, parents, subsidiaries, controlled companies, successors-in-interest, affiliates or divisions thereof, and includes current or former directors, officers, members or other managers, employees, outside consultants, agents, counsel, accountants, representatives, auditors, advisors, and other persons affiliated with, under the control of, or

acting or purporting to act on behalf of any predecessors, successors, parents, subsidiaries, affiliates or divisions thereof, or any otherwise related entities, including but not limited to Royal Palm Hotel Property LLC.

E.    The term "Purchase and Sale Agreement" refers to the Purchase and Sale Agreement by and between Royal Palm Hotel Property, LLC and Hyatt Equities dated on or about December 17, 2007.

F.    The term "communication" includes, but is not limited to, any meeting, conversation, discussion, conference, correspondence, message, or other written, oral or electronic transmission of information whether an original, a draft, or a copy, whether stored in hard copy, electronically, or digitally, either orally or in writing, including correspondence, electronic mail, telexes, facsimile transmissions, telecopies, recordings in any medium of oral communication, telephone and message logs, notes, or memoranda relating to written or oral communications.

G.    The term "document" includes, but is not limited to, paper, film, tape, slides, transparencies, diskettes, computer memory, or other material upon which verbal, graphic or pictorial information is written, printed, typed, drawn or reproduced in any fashion, including correspondence, electronic mail/messages and/or e-mail, electronically stored telephone messages and/or voice-mail, memoranda, notes, agreements, contracts, charts, and presentations (including presentations to the board of directors).

H.    The term "concerning" includes, but is not limited to, relating to, referring to, reflecting, constituting, containing, or describing the matter discussed. The term includes, but is not limited to, documents underlying, supporting, necessary for the understanding of, now or previously attached or appended to, or used in the preparation of any document called for by each request.

- 2 -

I.      The terms "all," "each," "every," and "any" shall be construed as all and any.

J.      The connectives "and" and "or" shall be construed disjunctively or conjunctively as necessary to bring within the scope of the request all documents that might otherwise be construed to be outside of its scope.

K.      The term "including" means "including, but not limited to."

## INSTRUCTIONS

A.      This request shall be deemed continuing and any document requested herein that is presently unavailable but which becomes available to you or to any of your attorneys, agents or representatives up to the conclusion of the proceedings herein must be produced in a supplemental document production.

B.      The documents requested herein are to be produced as they are kept in the usual course of business or organized and labeled to correspond to the numbered paragraphs and/or categories of particular requests. If there are no documents responsive to a particular numbered paragraph and/or category, so state in writing.

C.      For each document responsive to this request withheld under a claim of privilege, the following information shall be provided:

(1)      the nature of the privilege (including work product) which is being claimed and, if applicable, the state rule or law governing such claim;

(2)      the identity of all persons who have or have had access, or purport to have or have had access, to said document;

(3)      the type of document;

(4)      the general subject matter of the document;

(5)      the date of the document; and

(6)    such other information as is sufficient to identify the document for a subpoena <u>duces tecum</u>, including, where appropriate, the document author(s), addressee(s), and where not apparent, the relationship between the author(s) and addressee(s).

D.    All documents produced in response to this request shall be provided in their entirety, notwithstanding the fact that portions thereof may contain information not requested. All interim as well as final versions of the document shall be produced, and all versions or copies that are not identical to the original or other produced copy of the document, whether due to handwritten notations, revisions or otherwise, shall be produced.

E.    If any request herein cannot be complied with in full, it shall be complied with to the extent possible with an explanation as to why full compliance is not possible.

### DOCUMENTS TO BE PRODUCED

1.    All communications between Hyatt Equities and the Royal Palm Hotel, Royal Palm or Guy T. Mitchell since October 17, 2007 concerning Hyatt's acquisition of the Royal Palm Hotel.

2.    All communications between Hyatt Equities and Carbon Capital concerning Royal Palm, Guy T. Mitchell or the Royal Palm Hotel since October 17, 2007.

3.    All documents concerning the Royal Palm Hotel, Royal Palm or G Guy T. Mitchell since October 17, 2007.

4.    All documents concerning the acquisition of the Royal Palm Hotel by Hyatt since October 17, 2007.

5.    All documents and communications concerning extension or amendment of the closing date under Section 9.1 of the Purchase and Sale Agreement.

6.    All documents and communications concerning amendment of the Purchase and Sale Agreement.

- 4 -

7.      All documents and communications concerning the letter from Leah A. Schleicher dated January 28, 2008 to Royal Palm Hotel Property LLC, First American Title Insurance Company and Akerman Senterfitt terminating the Purchase and Sale Agreement.

.

# EXHIBIT 9
# to the Declaration of Jonathan N. Francis

# ARNOLD & PORTER LLP

Jonathan N. Francis
Jonathan.Francis@aporter.com

212.715.1719
212.715.1399 Fax

399 Park Avenue
New York, NY 10022-4690

May 15, 2008

**VIA E-MAIL AND FEDERAL EXPRESS**

Darrell J. Graham, Esq.
The Law Office of Darrell J. Graham, LLC
53 West Jackson Boulevard, Suite 1334
Chicago, Illinois 60604

      Re:    <u>Guy T. Mitchell v. Carbon Capital II, Inc.</u>

Dear Mr. Graham:

      I write with respect to the two subpoenas that we have issued.

      As you may know, on May 7, 2008, Carbon Capital II, Inc. ("Carbon Capital") voluntarily dismissed the action in the Southern District of New York captioned <u>Carbon Capital II, Inc. v. Royal Palm Senior Investors, LLC and Guy T. Mitchell</u>. Promptly thereafter, our client commenced the above-referenced action in the same court seeking declaratory judgment and injunctive relief against Carbon Capital. At a conference held yesterday, the Court ordered expedited discovery in preparation for a preliminary injunction hearing scheduled for June 11, expressly contemplating that non-party discovery will be completed before that date.

      Although our previous subpoenas duces tecum to Hyatt Corporation and Hyatt Equities, L.L.C. (collectively, "Hyatt") have been cancelled, we are re-serving our subpoenas on Hyatt with the new action's caption. Enclosed are courtesy copies of our renewed subpoenas. To accommodate the June 11 hearing date, these subpoenas are returnable on May 23. Since these are same document requests that we served on April 29, we do not expect Hyatt will have any difficulty complying.

      In addition, to address Hyatt's objection to the relevance of the documents sought in the subpoenas, I enclose a copy of the First Amended Complaint. In light of the foregoing, I suggest we speak this afternoon to discuss Hyatt's response.

# ARNOLD & PORTER LLP

Darrell J. Graham, Esq.
May 15, 2008
Page 2

Thank you for your cooperation.

Sincerely,

Jonathan N. Francis

Encl.

Case 1:08-cv-03193   Document 4   Filed 06/03/2008   Page 73 of 97

· Case 1:08-cv-04319-UA   Document 3   Filed 05/13/2008   Page 1 of 11 .

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

ROYAL PALM SENIOR INVESTORS, LLC and GUY T. MITCHELL,

                          Plaintiffs,

              -against-  ·

CARBON CAPITAL II, INC.,

                         Defendant.

---

08 Civ. 4319

**FIRST AMENDED COMPLAINT**

RECEIVED
MAY 13 2008 ·
U.S.D.C. S.D. N.Y.
CASHIERS

      Plaintiffs Royal Palm Senior Investors, LLC ("Royal Palm") and Guy T. Mitchell ("Mitchell"), by and through their attorneys, Arnold & Porter LLP, as for their First Amended Complaint against defendant Carbon Capital II, Inc. ("Carbon Capital") allege as follows:

NATURE OF THE ACTION

      1.    This is an action for declaratory judgment and injunctive relief to prevent Carbon Capital from interfering with plaintiffs' right and ability to manage and market for sale the Royal Palm Hotel, located in Miami Beach, Florida by alleging that Royal Palm has defaulted under the parties' October 24, 2007 Settlement Agreement (the "Settlement Agreement").

THE PARTIES

      2.    Plaintiff Royal Palm is a limited liability company organized and existing under the laws of the State of Delaware, having its principal place of business in the State of Florida. The members of Royal Palm are citizens and residents of the States of Delaware, Michigan, Florida, Illinois and Ohio.

      3.    Plaintiff Guy T. Mitchell is a citizen and resident of Florida.

4.    On information and belief, defendant Carbon Capital is a corporation duly organized and existing under the laws of the State of Maryland, having its principal place of business at 40 East 52nd Street, New York, New York 10022.

### THE AMOUNT IN CONTROVERSY

5.    The amount in controversy between plaintiffs and Carbon Capital exceeds the sum or value of Seventy-five Thousand and No/100 Dollars ($75,000), exclusive of interest and costs.

### JURISDICTION AND VENUE

6.    The United States District Court for the Southern District of New York has jurisdiction over this matter based on diversity of citizenship pursuant to 28 U.S.C. § 1332 and 28 U.S.C. § 1441 (a), (b) and (c).

7.    Venue is proper in this District because Carbon Capital, by agreement, irrevocably consented to venue in any federal, state, county or municipal court sitting in the State of New York with respect to any action brought by plaintiffs concerning the subject matter of this lawsuit, and because Carbon Capital resides in this District.

### FACTS

8.    On or about February 18, 2005, Royal Palm executed a promissory note (the "Note") made payable to the order of Carbon Capital.

9.    Also on or about February 18, 2005, Royal Palm and Carbon Capital entered into a loan agreement (the "Loan Agreement").

10.    Also on or about February 18, 2005, in connection with the Loan Agreement, Mitchell executed a Guaranty Agreement (the "Guaranty Agreement") with respect to the loan made pursuant to the Loan Agreement.

- 2 -

11.    Under the terms of the Guaranty Agreement, Mitchell guaranteed payment of the Guaranteed Obligations (as that term is defined in the Loan Agreement), and Mitchell is liable therefor as a primary obligor. In the event that Royal Palm were to default under the Loan Agreement, Mitchell would be liable to Carbon Capital for the entire amount of the Guaranteed Obligations. Further, under the terms of the Guaranty Agreement, Mitchell becomes liable for payment of the Guaranteed Obligations once Royal Palm fails to pay them, and Carbon Capital has no duty to seek payment of the Guaranteed Obligations from any party in advance of holding Mitchell liable therefor.

12.    On or about October 24, 2007, Carbon Capital, Royal Palm, Mitchell and certain other guarantors entered into the Settlement Agreement.

13.    As part of the Settlement Agreement, the parties each made promises to the other. Carbon Capital, inter alia, covenanted to make the mortgage payments on behalf of the Royal Palm Hotel for the months of October 2007, November 2007, December 200 and January 2008. For its part, Royal Palm agreed, inter alia, by March 31, 2008 either to pay to Carbon Capital the amount set forth in the Settlement Agreement, or to cause the sale of the Royal Palm Hotel, or refinance the Note.

14.    Also on or about October 24, 2007, Mitchell, as Royal Palm's guarantor with respect to the Settlement Agreement, executed a Reaffirmation of his February 18, 2005 Guaranty Agreement (the "Reaffirmation of Guaranty"). The Reaffirmation of Guaranty applied the terms of the Guaranty Agreement to the Settlement Agreement, and Mitchell agreed that the Guaranteed Obligations includes full repayment of the loan made to Royal Palm.

15.    In the fall of 2007, Hyatt Corporation and Hyatt Equities, L.L.C. (collectively, "Hyatt") expressed an interest in purchasing the Royal Palm Hotel. On or about November 15,

- 3 -

2007, Royal Palm and Hyatt executed a Letter of Intent and on or about December 17, 2007 executed a Purchase and Sale Agreement (the "Purchase and Sale Agreement").

16.    Under the terms of the Purchase and Sale Agreement, on December 19, 2007, Hyatt deposited $6 million of the confidential total purchase price as "earnest money" into escrow. Hyatt had until January 28, 2008 to complete its due diligence and decide whether to terminate the transaction and recover its earnest money. Even though control of the Royal Palm Hotel was to pass to Hyatt only at the agreed-upon February 1, 2008 closing date, Hyatt was nevertheless entitled to establish shadow management at the hotel prior to that date. Hyatt assembled its shadow management, and it took residence in the Royal Palm Hotel in late January 2008 and began to assume effective control over its operations.

17.    Beginning on January 24, 2008, Hyatt began a series of requests for delayed closing dates, first a few days, then a few weeks, and finally until April 1, 2008, one day after the Settlement Agreement's March 31, 2008 deadline to sell the Royal Palm Hotel. Royal Palm had no choice but to refuse Hyatt's final request for an April 1 closing date.

18.    On January 28, 2008, Hyatt terminated the Purchase and Sale Agreement, and its shadow management immediately and abruptly departed the hotel.

19.    Hyatt provided conflicting reasons for its requests for an extension of the closing date.

20.    Hyatt's termination of the Purchase and Sale Agreement was highly suspicious. After Hyatt did so, David Tarr, Hyatt's Senior Vice President of Real Estate and Development, North America Division - Eastern Region who negotiated the Purchase and Sale Agreement on behalf of Hyatt, called Mitchell and was extremely apologetic. He stated that he was uncomfortable with Hyatt's actions, saying "again, I am very sorry to be acting in this manner --

- 4 -

Case 1:08-cv-03193    Document 4    Filed 06/03/2008    Page 77 of 97

Case 1:08-cv-04319-UA    Document 3    Filed 05/13/2008    Page 5 of 11 .

I am more troubled by it than you can imagine," and "all I can do is assure you that these decisions are not being driven by me."

21.    On information and belief, Carbon Capital either directly or indirectly informed Hyatt of the confidential terms of the Settlement Agreement or otherwise interfered with the completion of the sale to Hyatt.

22. .   On or about March 25, 2008, counsel to Carbon Capital informed Royal Palm by letter that Royal Palm had purportedly failed to comply with the terms and conditions of the Settlement Agreement. Specifically, Carbon Capital claimed that Royal Palm had defaulted on its obligations under Sections 6.3.2, 8, 6.3.3 and 7.1 of the Settlement Agreement to (1) enter into a new cash management agreement with Wachovia Bank; (2) terminate and replace the existing Royal Palm Hotel's management team and (3) obtain certain opinions of counsel.

23.    By the explicit terms of the Settlement Agreement, Carbon Capital waived Royal Palm's obligation to comply with Sections 6.3.2 and 6.3.3.

24.    Moreover, beginning in late October 2007, Carbon Capital began to work with the Royal Palm Hotel's management to aggressively monitor the hotel's overall financial performance, as well as its bookings, rates, cash flow, liens, accounts payable, profits and losses, balance sheet, and sales and marketing activity. By this course of conduct, Carbon Capital waived Royal Palm's obligation to comply with the terms of Sections 7.1 and 8 of the Settlement Agreement.

25.    On or about April 1, 2008, counsel to Carbon Capital informed Royal Palm by letter that Royal Palm had purportedly failed to comply with other terms and conditions of the Settlement Agreement. Specifically, Carbon Capital claimed that Royal Palm had defaulted by, prior to March 31, 2008, failing to either pay the amount set forth in the Settlement Agreement, or to cause the sale of the Royal Palm Hotel, or refinance the Loan.

26.    By directly or indirectly interfering with Royal Palm's sale of the Royal Palm Hotel to Hyatt, Carbon Capital breached its duty of good faith and fair dealing with Royal Palm and was not entitled to claim that Royal Palm had defaulted by failing to sell the hotel.

27.    Carbon Capital contends that, by virtue of Royal Palm's alleged default under the Settlement Agreement, it is now the managing member of the Royal Palm Hotel, and that 99.9% of Royal Palm's membership interest in the Royal Palm Hotel had been automatically conveyed to Carbon Capital.

28.    Royal Palm has not defaulted under the Settlement Agreement. Rather, it was Carbon Capital that waived Royal Palm's obligation to comply with the terms of Sections 6.3.2, 8, 6.3.3 and 7.1 of the Settlement Agreement. Likewise, it was Carbon Capital that failed to make the mortgage payments on behalf of the Royal Palm Hotel as required by the Settlement Agreement. And, on information and belief, it was Carbon Capital that either directly or indirectly interfered with Royal Palm's ability to sell the Royal Palm Hotel on or before March 31, 2008.

29.    On April 3, 2008, Carbon Capital brought an action against plaintiffs in the Commercial Division of New York State Supreme Court, seeking declaratory and injunctive relief ("Carbon Capital's Action"). In that action, Carbon Capital alleged that Royal Palm and Mitchell had violated the Settlement Agreement, principally by failing to complete the sale of the Royal Palm Hotel by March 31, 2008. Carbon Capital, claiming immanent harm, sought a temporary restraining order and an injunction giving it control over the Royal Palm Hotel.

30.    On April 16, 2008, Royal Palm and Mitchell removed Carbon Capital's Action to the United States District Court for the Southern District of New York.

31.    On April 17, 2008, that Court denied Carbon Capital's motion for a temporary restraining order transferring control of the Royal Palm Hotel to Carbon Capital. The Court

- 6 -

scheduled an evidentiary hearing for May 1, 2008 on Carbon Capital's motion for a preliminary injunction seeking the same relief.

32.     The parties negotiated a stipulated stand-still order and a confidentiality order, and undertook expedited discovery.

33.     On April 30, 2008, at Carbon Capital's request, the parties appeared before the Court, at which time the evidentiary hearing was postponed until May 13, 2008.

34.     On May 7, Carbon Capital dismissed its own action without prejudice.

35.     After encountering no success in its own Action, Carbon Capital attempted to avail itself of the inconsistent remedy of a UCC foreclosure sale.

36.     On April 18, 2008, after the Court refused to issue an order transferring control of the Royal Palm Hotel to Carbon Capital, Carbon Capital issued a UCC Foreclosure Notice, contemplating a sale at 11:00 am on May 5, 2008.

37.     Following the April 30 court conference, Carbon Capital agreed to delay its foreclosure sale until after the evidentiary hearing on its injunction.

38.     On May 1, 2008, Carbon Capital amended its UCC Foreclosure Notice for a sale on May 21, 2008.

39.     Under the Settlement Agreement, if control of the Royal Palm Hotel is transferred from Royal Palm to Carbon Capital, the proceeds of any sale of the hotel in excess of the hotel's mortgage and the amount due on the Note are due to Royal Palm.

40.     A foreclosure sale would necessarily impair the sale value of the Royal Palm Hotel, thus reducing or eliminating Royal Palm's return of equity and potentially give rise to a deficiency with respect to repayment of the loan to Carbon Capital.

41.     Since dismissing the Carbon Capital Action, Carbon Capital has not withdrawn its Foreclosure Notice and has publicly advertised the sale.

- 7 -

42.    Carbon Capital has no right to foreclosure under the Settlement Agreement.

43.    Under the terms of the Guaranty Agreement and the Reaffirmation of Guaranty, in the event of a default by Royal Palm under the Settlement Agreement, Carbon Capital may assert that, as a primary obligor, Mitchell is immediately liable to Carbon Capital for the entire amount of the Guaranteed Obligations.

## FIRST CLAIM FOR RELIEF

44.    Plaintiffs repeat and reallege paragraphs 1 through 43 of this Complaint as if fully set forth herein.

45.    Royal Palm is not in default under the Settlement Agreement.

46.    Carbon Capital has waived Royal Palm's obligation to comply with certain terms of the Settlement Agreement.

47.    Carbon Capital has materially breached its obligations under the Settlement Agreement.

48.    Carbon Capital has interfered with Royal Palm's ability to satisfy its obligations under the Settlement Agreement.

49.    Carbon Capital has wrongly declared Royal Palm in default under the Settlement Agreement and has issued a Notice of Foreclosure.

50.    An actual, ripe, justiciable controversy exists between plaintiffs and Carbon Capital as to their respective rights and obligations under the Settlement Agreement, and this Court is empowered to grant relief under 28 U.S.C. § 2201.

51.    Plaintiffs are entitled to a declaratory judgment that: (i) Royal Palm is not in default under the Settlement Agreement; (ii) Carbon Capital is not entitled to exercise any remedies under the Settlement Agreement against Royal Palm, including foreclosure; and (iii)

- 8 -

Royal Palm is entitled to a reasonable period of time to satisfy its obligations under the Settlement Agreement.

## SECOND CLAIM FOR RELIEF

52.    Plaintiffs repeat and reallege paragraphs 1 through 51 of this Complaint as if fully set forth herein.

53.    Plaintiffs will be irreparably injured in the event that Carbon Capital exercises any of its remedies under the Settlement Agreement, including the remedy of foreclosure.

54.    Plaintiffs have no adequate remedy at law.

55.    Plaintiffs are entitled to preliminary and permanent injunctive relief barring Carbon Capital from exercising any remedies under the Settlement Agreement.

## THIRD CLAIM FOR RELIEF

56.    Plaintiffs repeat and reallege paragraphs 1 through 55 of this Complaint as if fully set forth herein.

57.    In the event of a default by Royal Palm under the Settlement Agreement, Carbon Capital will be able to assert a claim against Mitchell under the Guaranty Agreement and the Reaffirmation of Guaranty for the entire amount of the Guaranteed Obligations as a primary obligor.

58.    Carbon Capital is not entitled assert a claim against Mitchell under the Guaranty Agreement or the Reaffirmation of Guaranty.

59.    An actual, ripe, justiciable controversy exists between Plaintiffs and Carbon Capital as to Mitchell's liability under the Guaranty Agreement and Reaffirmation of Guaranty with respect to the Loan Agreement and Settlement Agreement, and this Court is empowered to grant relief under 28 U.S.C. § 2201.

- 9 -

60.    Plaintiffs are entitled to a declaratory judgment that Mitchell has no liability to Carbon Capital under either the Guaranty Agreement or Reaffirmation of Guaranty.

### PRAYER FOR RELIEF

WHEREFORE, plaintiffs Royal Palm and Mitchell demand judgment against defendant Carbon Capital:

(a)    On their First Claim for Relief, an order adjudging, declaring, and decreeing that: (i) Royal Palm is not in default under the Settlement Agreement; (ii) Carbon Capital is not entitled to exercise any remedies under the Settlement Agreement against Royal Palm, including foreclosure; and (iii) Royal Palm is entitled to a reasonable period of time to satisfy its obligations under the Settlement Agreement;

(b)    On its Second Claim for Relief, preliminary and permanent enjoining Carbon Capital from exercising any remedies under the Settlement Agreement;

(c)    On their Third Claim for Relief, an order adjudging, declaring, and decreeing that Mitchell has no liability to Carbon Capital under either the Guaranty Agreement or Reaffirmation of Guaranty;

(d)    An award of all costs and disbursements, including actual attorneys' fees, that Plaintiffs incur in this action; and

(e)     Granting such other and further relief as the Court deems just and proper.

Dated: New York, New York
        May 12, 2008

ARNOLD & PORTER LLP

By:

H. Peter Haveles, Jr.
Jonathan N. Francis
399 Park Avenue
New York, NY 10022
(212) 715-1000
Peter_Haveles@aporter.com

Attorneys for Plaintiffs

# EXHIBIT 10
## to the Declaration of Jonathan N. Francis

## THE LAW OFFICE OF DARRELL J. GRAHAM, LLC

### 53 WEST JACKSON BOULEVARD, SUITE 1334
### CHICAGO, ILLINOIS 60604

**By Email To jonathan.francis@aporter.com**
**& Federal Express**

May 22, 2008

Mr. Jonathan Francis
Arnold & Porter LLP
399 Park Avenue
New York, NY 10022-4690

Re:  Hyatt/Subpoenas—Objections of Hyatt Equities LLC and Hyatt Corporation

Dear Jonathan:

As you know, I represent both Hyatt Equities LLC and Hyatt Corporation in the above
referenced matter.  On May 16, 2008, your firm served on Hyatt Corporation and Hyatt
Equities (collectively "Hyatt") subpoenas in a case brought by Guy T. Mitchell against
Carbon Capital II, Inc., which you have explained is pending in the Southern District of
New York.  This letter follows a series of communications that we have had regarding
Hyatt's objections to your subpoenas and ways to narrow the scope of the subpoenas.
Consider this letter a formal objection under Fed. R. Civ. P. 45 to production of certain
documents or other information pursuant to those subpoenas.

#### Objections To The Subpoenas

Your subpoenas effectively seek all documents relating to Hyatt's evaluation of and
negotiation for Royal Palm Hotel.  First, the records requested are voluminous and
burdensome for Hyatt to review, collect and produce, as both I and Ms. Jones have
previously explained.  Second, some of the documents you are requesting are
communications between Hyatt and your client.  You should already have those
documents and there is no basis for forcing on a non-party the burden and cost of
collecting documents that you already have.  Third, your request asks Hyatt to produce
documents that contain confidential research, development or commercial information, to
which you are not entitled.  Fourth, as both Ms. Jones and I have explained, we do not see
how the documents you have requested are relevant to or likely to lead to the discovery of
admissible evidence based on the agreements between your client and Hyatt.  Finally,
among the documents you have requested are documents that may fall under either or
both the attorney-client-privilege or attorney-work-product rules.  For all of these
reasons, Hyatt objects to the subpoenas at issue under Rule 45.

## THE LAW OFFICE OF DARRELL J. GRAHAM, LLC

The bottom line is that the complaint that you forwarded to me is based on information and belief and you have no direct evidence that any of the defendants communicated with Hyatt either directly or indirectly regarding its prospective acquisition of Royal Palm Hotel. Accordingly, it is unreasonable to require Hyatt, a third-party, to devote substantial time and money in collecting and reviewing documents for your case. One would think that if such communications took place then you should already have some evidence of that or you should be able to obtain that evidence from the defendants. That said, Hyatt has agreed to search for and produce certain documents, to the extent such documents exist. The search that Hyatt will conduct is described in the next section, and other than those documents that Hyatt has expressly agreed to search for, it expressly objects to searching for and/or producing.

### What Hyatt Has Agreed To Search For And Produce

The gist of your case is that the defendants somehow tortiously interfered with agreements between Hyatt and your clients. Accordingly, Hyatt has agreed to search for and produce documents that are not privileged and that reflect communications between defendants and Hyatt regarding the Royal Palm deal.

Specifically, Hyatt has agreed to search the email of the following Hyatt executives for documents that reflect communications between defendants and Hyatt regarding the Royal Palm deal: Steve Haggerty—Global Head, Real Estate and Development; Jim Abrahamson—Senior Vice President, Real Estate and Development, The Americas; David Tarr—Senior Vice President, Real Estate and Development, North America Division, Eastern Region; and Marc Sallette—Director of Development. These executives were the "Development Team", and were responsible for the Royal Palm negotiations. You have also asked us to review the emails of Tom Pritzker. This presents an even greater burden on a non-party because Mr. Pritzker holds many positions that are unrelated to the subpoenaed entities. In the interest of compromise, Hyatt will conduct a limited search of Mr. Pritzker's emails using the search terms "Carbon", "Carbon Capital", "Blackrock" and "Black Rock", limited by the date range of January 24, 2008, to February 1, 2008.

Finally, you have asked us to review the files of subordinates to the above Development Team, but we consider that a burdensome and unreasonable request at this time, because it is highly unlikely that there would be documents reflecting communications with defendants in the files of subordinates if there are no documents mentioning such communications in the files of those responsible for the negotiations. If we determine that there are responsive documents in the files of the executives then we will revisit with you searching the files of subordinates.

Phone: 312-922-4533 • Fax: 312-922-4757 • Email: dgraham@djgrahamlaw.com

# THE LAW OFFICE OF DARRELL J. GRAHAM, LLC

You have identified specific search terms to use in searching the emails. I have placed the terms into categories: (i) terms we have agreed to use in a search, and (ii) terms that we consider too broad and therefore burdensome.

- <u>Terms Hyatt Has Agreed To Use</u>: Blackrock; Black Rock; Carbon; CC [as an acronym for Carbon Capital to be searched for in the subject or text field, but not in the "cc:" field]; Midland; Pomar; Ash; Mascarenas; Farinola; Dejulio; Shawn; Soose; "Lea Land"; McNeill; Deane; and Berke. Hyatt will also search email files for documents with the following search terms, but limited to the period from January 24, 2008, to February 1, 2008: Settlement Agreement; Shadow; Mezz*; Wachovia; and Capital Event.[1]

- <u>Terms Hyatt Considers Overbroad And Burdensome</u>: Royal Palm; Mitchell; Closing Date.

Although Hyatt has agreed to search for documents using the above search terms, that does not mean that Hyatt has agreed to produce all documents that contain such terms. As we have explained, the information you are seeking may contain confidential and competitively sensitive information that do not reflect communications between Hyatt and defendants regarding the Royal Palm deal. Accordingly, such documents will only be produced if they reflect communications between defendants and Hyatt concerning the Royal Palm deal.

## Timing And Review Of Documents

We have done a preliminary review of various files. In order to conduct a further email review, Hyatt must hire an outside service. This is time consuming, inconvenient and expensive. Hyatt is meeting with outside services tomorrow. It is unclear at this time how long it will take Hyatt to respond to your requests, because we do not know how many documents will be identified based on your search terms. We will discuss this with you as soon as we know the volume of documents.

\* \* \*

---

[1] An "\*" represents that a broader search term will be used.

---

Phone: 312-922-4533 • Fax: 312-922-4757 • Email: dgraham@djgrahamlaw.com

## THE LAW OFFICE OF DARRELL J. GRAHAM, LLC

I appreciate your cooperation in this matter and hope that we can continue to work toward a reasonable production of materials. In the meantime, if you should have any questions, please call.

Very truly yours,

Darrell J. Graham

cc: Margaret Jones

Phone: 312-922-4533 • Fax: 312-922-4757 • Email: dgraham@djgrahamlaw.com

# EXHIBIT 11
## to the Declaration of Jonathan N. Francis

# ARNOLD & PORTER LLP

Jonathan N. Francis
Jonathan.Francis@aporter.com

212.715.1719
212.715.1399 Fax

399 Park Avenue
New York, NY 10022-4690

May 23, 2008

**VIA E-MAIL AND FEDERAL EXPRESS**

Darrell J. Graham, Esq.
The Law Office of Darrell J. Graham, LLC
53 West Jackson Boulevard, Suite 1334
Chicago, Illinois 60604

    Re:    <u>Guy T. Mitchell v. Carbon Capital II, Inc.</u>

Dear Mr. Graham:

    I write with respect to your letter of May 22, 2008. That letter set forth the objections of your clients, Hyatt Corporation and Hyatt Equities, L.L.C. (collectively, "Hyatt"), to the May 15, 2008 subpoenas duces tecum issued in a case pending in the Southern District of New York under the caption <u>Guy T. Mitchell v. Carbon Capital II, Inc.</u>

    As you know, Judge Sprizzo in the Southern District of New York has ordered that non-party discovery be conducted on a expedited basis and completed by June 11, 2008. Accordingly, since first serving these subpoenas on April 29 in the prior <u>Carbon Capital II, Inc. v. Royal Palm Senior Investors, LLC and Guy T. Mitchell</u> action, we have worked with both Hyatt's in-house counsel and your office to reach agreement regarding the scope of Hyatt's document collection.

    As an offer of compromise, we agreed to strike Document Request No. 1, and limited Request No. 3 to documents concerning Guy T. Mitchell. In addition, in light of the 70 people who worked on Hyatt's aborted acquisition of the Royal Palm Hotel, we agreed that Hyatt may exclude all clerical or operations staff and limit its search to the documents of the "development staff," such as Thomas Pritzker, Steve Haggerty, Jim Abrahamson, David Tarr, Marc Sallette and their subordinates. In addition, at your request, we provided a list of 28 terms that Hyatt should use to search responsive custodians' electronic files. In addition, to save Hyatt from the need to collect and review contract negotiation documents, we agreed that Hyatt could limit its search to the period dating from after Hyatt and Royal Palm Senior Investors, LLC entered into the December 17, 2007 Purchase and Sale Agreement until February 1, 2008. Finally, to protect the confidentiality of Hyatt's information, we supplied a copy of the parties' Confidentiality Stipulation and Order (the stipulation is pending signature by Judge

# ARNOLD & PORTER LLP

Darrell J. Graham, Esq.
May 23, 2008
Page 2

Sprizzo) and offered to allow Hyatt to designate its entire production Highly Confidential (i.e., attorneys' eyes only), pending negotiation of the appropriate designation of specific documents. Despite these reasonable accommodations, your letter of May 22, 2008 rejected our offer of compromise in several respects.

First, citing the fact that our client's complaint contains allegations made on information and belief, Hyatt's objections purport to arrogate for itself the right to determine the likelihood that our requests will lead to the discovery of favorable evidence. Based on that determination, Hyatt has indicated that it does not intend to comply with certain of our requests, despite the absence of an undue burden, most notably Requests Nos. 5-7. Hyatt's position that information and belief pleadings, based on circumstantial evidence, do not entitle a plaintiff to discovery is incorrect, and is inconsistent with its obligations under Federal Rule of Civil Procedure 45. Moreover, based on its reading of our complaint, Hyatt's has indicated that it will withhold from its production any document collected as part of its improperly limited search that does not, in its opinion, reflect direct communications between Hyatt and Carbon Capital.

Hyatt does not have the right under Rule 45 to withhold production based on its evaluation of the utility of a document to our client's case. The purpose of discovery, even from a non-party such as Hyatt, is to enable a party to collect direct and circumstantial evidence, as well as information that would lead to the ultimate collection of such evidence. Hyatt's narrow view of its discovery obligations is contrary to the dictates of Rule 26, and is not sustainable under Rule 45. The rules do not empower Hyatt to cull through discoverable materials and to determine whether they are probative before producing them. Accordingly, we request that Hyatt comply with its obligations under Rule 45 and produce all documents responsive to our requests, as modified by our proposed limitations above, regardless of whether Hyatt believes those documents tend to support or refute our client's allegations.

Second, Hyatt has refused to search the documents of all responsive custodians, improperly limiting its search to four members of the development team but not their subordinates. Hyatt's has represented its belief that, unless specifically noted, the substance of the subordinates' documents will necessarily be reflected in the documents of their supervisors. That premise is speculative, and cannot be a basis for restricitng the search of personnel who could reasonably be believed to possess responsive documents. Unless Hyatt is willing to provide an affidavit attesting to the fact that it has reviewed the subordinates' files and that the review has revealed no responsive documents, we cannot accept Hyatt's representation that a complete search is unnecessary.

# ARNOLD & PORTER LLP

Darrell J. Graham, Esq.
May 23, 2008
Page 3

Hyatt had previously not included Thomas Pritzker on its proposed list of custodians whose documents would be searched. Yesterday, we shared with you a voicemail left for our client by David Tarr (Hyatt's Senior Vice President, Real Estate and Development, North America Division, Eastern Region), one of the four individuals that Hyatt had on its list. In that voicemail, Mr. Tarr revealed that Mr. Pritzker was the decision-maker regarding Hyatt's decision to terminate the agreement for Hyatt to acquire the Royal Palm Hotel. Any preliminary investigation by Hyatt of the personnel involved in this transaction should have necessarily led to Mr. Pritzker. Either that investigation was not undertaken or Hyatt attempted to conceal Mr. Pritzker's involvement. We can take no comfort, therefore, in Hyatt's representations that the documents of four individuals' will suffice or indicate whether it will be necessary to search another custodian's documents. Accordingly, we request that Hyatt include Thomas Pritzker, Steve Haggerty, Jim Abrahamson, David Tarr, Marc Sallette and their subordinates in its search for responsive documents.

Third, Hyatt has indicated that it intends to limit certain portions of its search to the nine-day period dating from January 24, 2008 through February 1, 2008. Such a limitation is unreasonable and arbitrary. We have requested that Hyatt conduct its search for all responsive documents over the period dating from December 17, 2007 through February 1, 2008. Our client is entitled to discovery regarding the prior course Hyatt was pursuing with regards to the acquisition of the Royal Palm Hotel, Hyatt's decision to change course and the circumstances that attended that decision, none of which is permitted by such an unreasonable date restriction. Moreover, Hyatt stands to incur minimal, if any, additional burden by searching for responsive documents over a six week span.

Finally, Hyatt has agreed to 16 of our search terms, ignored four, refused three, and restricted five to the unreasonable nine-day period, as above. All of the search terms are pertinent to the document requests set forth in the subpoenas, and Hyatt has no right to edit them. Indeed, Hyatt's selective use of search terms would eviscerate Hyatt's obligations to produce responsive documents. Since these terms will be used solely to search electronic files, Hyatt stands to incur no additional burden by using all of our requested terms, as compared to the subset that it has agreed to use. Accordingly, we request that Hyatt agree to use all 28 search terms, without its improper restrictions.

To accommodate our expedited discovery schedule, please let us have Hyatt's response by the close of business on May 27, 2008 so that, if it is necessary, we can promptly seek judicial resolution of any remaining disputes.

# ARNOLD & PORTER LLP

Darrell J. Graham, Esq.
May 23, 2008
Page 4

Thank you for your consideration.

Sincerely,

Jonathan N. Francis

# EXHIBIT 12
## to the Declaration of Jonathan N. Francis

## THE LAW OFFICE OF DARRELL J. GRAHAM, LLC

### 53 WEST JACKSON BOULEVARD, SUITE 1334
### CHICAGO, ILLINOIS 60604

**By Email To jonathan.francis@aporter.com**

May 27, 2008

Mr. Jonathan Francis
Arnold & Porter LLP
399 Park Avenue
New York, NY 10022-4690

Re: Hyatt/Subpoenas—Reply to Letter of May 23, 2008

Dear Jonathan:

Contrary to the implication in your letter of May 23, 2008, Hyatt does want to cooperate in a reasonable production of documents to your client. The problem that you have created is that you are asking Hyatt, a non-party, to invest significant time and money into a production of documents on an expedited basis to pursue a claim that is based only on information and belief. Recall that in our first discussion I asked you whether you had any documents or other evidence of communications between defendants in this case and Hyatt and you said "no direct evidence." I told you that if you had such evidence we would take that into consideration in our objections. Based on our further discussions, it is my understanding that defendants have produced boxes of documents, but there is still no evidence that defendants communicated with Hyatt regarding the Royal Palm deal. I am confident that if such evidence existed you would have referred to it in your four page letter of May 23, 2008. Accordingly, Hyatt stands on its objections as stated in its letter of May 22, 2008.

I do want to respond to various points in your letter of May 23, 2008, which I find particularly troubling. You should not assume that I agree with any point to which I do not respond.

- To be clear, the subpoenas at issue were served on Hyatt via email on May 15, 2008. Hyatt had objected to the subpoenas served in the original case and those subpoenas had also expired. Accordingly, it is not correct to suggest that the present subpoenas date back to April 29th.

- We understand that you have indicated that Judge Sprizzo has ordered non-party discovery to be conducted on an expedited basis. For this reason, your clients should be particularly interested in narrowing your discovery to only documents

# THE LAW OFFICE OF DARRELL J. GRAHAM, LLC

that are likely to lead to the discovery of admissible evidence. Accordingly, we have limited our search for documents to communications between defendants and Hyatt. After all, that is the heart of your claim.

- Your assertion that Hyatt does not have the right to withhold documents based on "its evaluation of the utility of a document to [your] client's case" is misguided. I am absolutely confident that your firm, possibly in this case, has in virtually every response to a document request objected, at least in part, on the ground that the request is overbroad, burdensome and seeks documents that are not likely to lead to the discovery of admissible evidence. In this case, we have explained in detail both in conversations and in writing the reason for this position. I summarized Hyatt's position again in the first paragraph to this letter. Simply stated, it is unreasonable for you to require Hyatt to search for and produce information that has nothing to do with communications between Hyatt and defendants, especially information that is commercially sensitive. Indeed, Fed. R. Civ. P. 45 expressly provides for the protection of "confidential research, development, or commercial information." We believe that Hyatt is complying with its obligations under Fed. R. Civ. P. 45.

- The Development Team was responsible for the analysis and negotiations of the Royal Palm deal. It is reasonable for Hyatt to limit its search to this group, unless you have direct evidence that Hyatt had communications with defendants.

- With respect to search terms for the Development Team, Hyatt has only rejected three: Royal Palm, Mitchell and Closing Date, and the reason for that is that these search terms would likely identify a large number of documents that have nothing to do with communications between defendants and Hyatt. For example, the phrase "Royal Palm" could conceivably pick up a majority of documents regarding the deal because it was the Royal Palm deal. In fact, it would likely identify most of the documents responsive to your Request No. 1, which you concede is overly broad. The over-breadth of your search terms led us to a discussion of the date restriction (January 24 to February 1). Recall that Hyatt objected to many of the terms you proposed because they would identify an overbroad range of documents. You then suggested narrowing the date range in return for an agreement that Hyatt search for more of the terms. You initially proposed the time period January 24, to February 1, 2008. We agreed that this date restriction was reasonable, especially because you have asserted you are particularly interested in events during that time. In sum, we agreed to search on a broader range of terms based on the understanding that the search would be on a narrow period. As for purportedly ignored search terms, that was inadvertent. The terms inadvertently omitted were Exten*, Terminat*, Amend* and Loan

Page 2 of 3

## THE LAW OFFICE OF DARRELL J. GRAHAM, LLC

Agreement. These terms are very broad; nevertheless, Hyatt will search using these terms for the January 24 to February 1 period.

You have been very professional in our discussions and I hope that we can continue to work toward a compromise to production. However, there must be some reasonable basis for a collection and production of documents. We believe that our letter of May 22 lays out such a reasonable basis. We are collecting documents as outlined in our letter of May 22, but continue to be willing to discuss minor modifications to the procedures set out in that letter.

Very truly yours,

Darrell J. Graham

cc: Margaret Jones

Phone: 312-922-4533 • Fax: 312-922-4757 • Email: dgraham@djgrahamlaw.com