**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

**Guy T. Mitchell,**

      **Plaintiff,**

      **v.**                            **Case No.: 08 CV 3193**

                                     **Pending in the US. Dist. Ct. for the**

**Carbon Capital II, Inc.,**               **Southern Dist. of New York**

      **Defendant.**                 **The Honorable Judge Guzman**
                                       **Magistrate Judge Cole**

**HYATT CORPORATION'S AND HYATT EQUITIES, LLC'S RESPONSE
TO MOTION TO COMPEL COMPLIANCE WITH SUBPOENAS AND
MEMORANDUM IN SUPPORT OF MOTION TO QUASH SUBPOENAS**

OVERVIEW

Plaintiff's original subpoena sought virtually every document relating to Hyatt

Corporation's and Hyatt Equities, LLC's (collectively "Hyatt") analysis and potential purchase

of Royal Palm Hotel. Hyatt is not a party to the suit and Plaintiff's subpoena is disruptive,

grossly overbroad and seeks confidential, competitively sensitive, proprietary information on

how Hyatt evaluates business opportunities. Contrary to Plaintiff's representations, Hyatt has

agreed to search for and produce documents that would be likely to lead to the discovery of

admissible evidence in Plaintiff's case, and Hyatt began that process prior to the filing of the

Plaintiff's Motion to Compel.

To understand the discovery dispute, it is essential to understand the theory of Plaintiff's

case against Defendant, because Plaintiff's discovery must be tailored to search for documents

that are likely to lead to the discovery of admissible evidence.  Fed. R. Civ. P. 26(b)(1).  This is

especially true for discovery directed at non-parties.  Fed. R. Civ. P. 45 makes clear that "A party

or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid

imposing undue burden or expense on a person subject to the subpoena. The issuing court must

enforce this duty and impose an appropriate sanction—which may include lost earnings and

reasonable attorney's fees—on a party or attorney who fails to comply."

Plaintiff's Complaint is based on the lone theory that Defendant somehow interfered with

Hyatt Equities, LLC's prospective purchase of Royal Palm Hotel from plaintiff.  Despite over

31,000 pages of documents already produced in that case by both Plaintiff and Defendant, there

are no facts to support this claim.  Indeed, the central allegation in the complaint is based on

information and belief: "On information and belief, Carbon Capital either directly or indirectly

informed Hyatt of the confidential terms of the Settlement Agreement or otherwise interfered

with the completion of the sale to Hyatt."  (Pl. Mem., Aff. J. Francis, Ex. 9, ¶ 21.)[1]

Hyatt offered to review the email files of the Development Team, who are the

executives at Hyatt responsible for the Royal Palm negotiations, and produce any document

reflecting communications between Hyatt and Defendant.  Contrary to Plaintiff's assertion, Hyatt

agreed to do this for the entire period December 17, 2007, through February 1, 2008:

"Accordingly, Hyatt has agreed to search for and produce documents that are not privileged and

that reflect communications between defendants and Hyatt regarding the Royal Palm deal."  (Pl.

Mem. Aff. J. Francis, Ex. 10, p. 2.)

Plaintiff has rejected that offer demanding complete access to the Development Team's

email, based solely on the hunch that Carbon Capital must have communicated with Hyatt.

Under Plaintiff's theory, his suspicions, unsupported by any of the 31,000 documents already

---

[1] "Pl. Mem." = Mitchell's Memorandum Of Law In Support Of His Motion To Compel.

produced, entitle him to broad discovery of competitively sensitive information from a non-party. This is not the law, and a ruling granting broad ranging discovery in this case would encourage parties to file complaints based on a hunch and then undertake discovery of non-parties on a prayer that there might be something there. This is simply unfair, costly and burdensome to non-parties. Accordingly, Hyatt has moved to quash and/or modify the scope of the subpoena.

ARGUMENT

Under Rule 45, the Court may quash or modify a subpoena to protect a non-party from undue burden or "disclosing a trade secret or other confidential research, development, or commercial information." Fed. R. Civ. P. 45(c)(3)(B). In determining whether there is an undue burden to a non-party, the Seventh Circuit and other courts weigh the burden to the non-party of searching for and producing the documents subpoenaed against the value of the information to the serving party. *Northwestern Memorial Hospital v. Ahscroft*, 362 F.3d 923, 928 (7th Cir. 2004)(applying balancing test and quashing subpoena); *Premium Service Corp. v. Sperry & Hutchinson,* 511 F.2d 225, 229 (9th Cir. 1975)("The district court could reasonably have found, without abusing its discretion, that Premium Service's need for these documents was not sufficient to outweigh the burden and invasion of corporate privacy which would have resulted to Scott and Walker-Scott, especially since they were not parties to the suit."); *Jackson v. AFSCME Local 196,* 246 F.R.D. 410, 412 (D. Conn. 2007)( "the Court's evaluation of undue burden requires weighing the burden to the subpoenaed party against the value of information to the serving party"); *Premium Service Corp. v. Sperry & Hutchinson,* 511 F.2d 225, 229 (9th Cir. 1975)("The district court could reasonably have found, without abusing its discretion, that Premium Service's need for these documents was not sufficient to outweigh the burden and

invasion of corporate privacy which would have resulted to Scott and Walker-Scott, especially

since they were not parties to the suit."). *Schaff v. SmithKline Beecham Corp.*, 233 F.R.D. 451,

(E.D.N.C., 2005)(quashing subpoena and stating that "simply because "requested information is

discoverable under Rule 26 [ ] does not mean that discovery must be had."" (Omitting cites);

*Ligas v. Maram,* 2007 WL 2316940 at * 5 (N.D.Ill., Aug. 10, 2007)(quashing subpoena after

balancing intrusiveness of subpoena against possible relevance.)

In each of the above cases, the courts quashed or drastically modified the subpoena after

balancing the intrusiveness of the subpoena and cost of complying with the subpoena against the

relevance of the information sought.  For example, in *Jackson v. AFSCME Local 196,* 246

F.R.D. at 413, the court found that emails relating directly to plaintiff's claim (who was seeking

the emails) were relevant and discoverable, but emails that did not relate to that claim were not

likely to lead to the discovery of relevant evidence and quashed the subpoena.  Similarly, in

*Premium Service Corp. v. Sperry & Hutchinson,* 511 F.2d at 229, the Ninth Circuit found that it

would be inappropriate to allow a competitor of a non-party to search through the non-party's

files on the mere chance that there may be something relevant.

Next we analyze how Plaintiff's subpoena, as modified by Plaintiff's counsel's letter of

May 23, 2008, burdens Hyatt and why the broad discovery that Plaintiff is seeking is not relevant

to Plaintiff's claim.

> A.     HYATT AND PLAINTIFF'S CURRENT POSITIONS ON THE SUBPOENA

The following chart outlines Plaintiff's and Hyatt's respective positions on the subpoenas

(as modified by Plaintiff's counsel's letter of May 23, 2008 (Pl. Mem., Francis Aff. Ex. 11)) and

the areas of disagreement.

| Plaintiff's Proposal | Hyatt's Proposal | Disagreement |
|---|---|---|
| Search for <u>and</u> produce emails for the Development Team, their direct subordinates and Thomas Pritzker that contain certain terms Plaintiff has proposed for the period December 17, 2007, through February 1, 2008. | • <u>With respect to the Development Team</u>, Hyatt would search for emails using most of the terms at issue for the period identified, but would only produce documents reflecting direct or indirect communications between Hyatt and Defendant.<br><br>• <u>With respect to Thomas Pritzker</u>, Hyatt would search for any documents for the period from January 24 to February 1, 2008, reflecting direct or indirect communications between Hyatt and Defendant. | • Plaintiff wants Hyatt to produce all documents that contain any of the search terms in them regardless of whether those documents reflect direct or indirect communications between Hyatt and Defendant. Hyatt has offered to produce documents reflecting such communications.<br><br>• Plaintiff wants Hyatt to search the emails of the subordinates of the Development Team. Hyatt has agreed to search the Development Teams' documents, but not the subordinates. The Development Team and not the subordinates were the ones who controlled the negotiations and decisions relating to the acquisition of Royal Palm.<br><br>• Plaintiff wants Hyatt to search through and produce the emails of Thomas Pritzker using the proposed search terms, but such search would identify documents that are completely unrelated to the Royal Palm transaction because of Mr. Pritzker's many corporate roles. Accordingly, Hyatt has proposed to search for responsive emails for the limited period described. |

B.    RELEVANCE TO PLAINTIFF V. BURDEN TO HYATT

Plaintiff's case against Defendant is based on the assumption that Hyatt refused to

purchase Royal Palm from Plaintiff because "On information and belief, Carbon Capital either

directly or indirectly informed Hyatt of the confidential terms of the Settlement Agreement or

otherwise interfered with the completion of the sale to Hyatt."  (Pl. Mem., Aff. J. Francis, Ex. 9,

¶ 21).  Accordingly, relevant documents would be those that would indicate communications

between Defendant and Hyatt.  Hyatt has agreed to search for and produce such documents.

Plaintiff bases his claim that Defendant communicated with Hyatt on communications

from two people: David Tarr's email to Plaintiff on January 28, 2008, in which Mr. Tarr

requested an extension until April 1 to close the transaction; and Mr. Sallette's purported

discussion with Mr. Mitchell.  With respect to Mr. Tarr, Plaintiff asserts that Mr. Tarr chose that

date because Hyatt must have known that Plaintiff's agreement with Defendant requiring

Plaintiff to either close the sale of Royal Palm to Hyatt or pay off the mezzanine loan by March

31, 2008.  Mr. Tarr explains in his affidavit, attached to this Memorandum, that he did not know

of any such agreement between Plaintiff and Defendant and, to his knowledge, the request to

extend the deadline had nothing to do with Defendant or any direct or indirect communications

with Defendant.   Tarr Aff. ¶¶ 5-12.  As for statements that Mr. Sallette purportedly made, the

only person suggesting that such statements were made is Mr. Francis, plaintiff's counsel.

Moreover, all Mr. Francis alleges is that Mr. Sallette had knowledge of Defendant and not that

Defendant caused Hyatt to kill the deal with Plaintiff.

Moreover, Plaintiff's entire theory that Defendant induced Hyatt to ask for an extension

to April 1 in order to kill the deal is illogical.  As Mr. Tarr explains in his affidavit, Hyatt could

refuse to purchase Royal Palm for any reason or for no reason.  As Mr. Tarr explains, Hyatt

needed the extension to fully evaluate the purchase.  Tarr Aff. ¶¶ 13.  There was no reason for

Hyatt to fabricate a reason for killing the deal, because it could get out of the deal by simply

saying no.

Thus, the subpoenas as modified, demanding Hyatt produce the emails of its

Development Team, even documents that do not reflect communications with Defendant, are

simply not tailored to obtain relevant evidence.  For example, one of the search terms is Royal

Palm.  There is no reason why Hyatt should have to search for and produce documents that

include the term Royal Palm if they have nothing to do with Defendant.   The term Royal Palm

would pick up virtually every document, since the deal at issue was known as Royal Palm.

Accordingly, Plaintiff's contention that he has reasonably narrowed the request is silly.  In

addition, some of these documents may discuss alternatives to the Royal Palm deal, which

information is highly confidential and competitively sensitive.  It is unfair and inappropriate to

require Hyatt to produce such documents when they have nothing to do with communications

from Defendant.  Another search term that Plaintiff has proposed is "Closing Date."  Closing

Date is a common term used in virtually all deals.  There will be documents in Hyatt's files that

have this term, but have nothing to do with the Royal Palm transaction.  Again, Hyatt should not

have to produce those documents.  The bottom line is that Plaintiff's terms require a broad

production of documents that are clearly unrelated to anything having to do with Defendant.

Because the search terms require a broad production and pick up documents that are

competitively sensitive and irrelevant, there is a significant burden on Hyatt of having to review

and produce the documents requested.  First, the emails that Plaintiff seeks contain confidential,

competitively sensitive information that shows how Hyatt evaluates prospective business

opportunities, as well as alternative business opportunities available to Hyatt.  Hyatt cannot

allow competitors and prospective sellers, such as Plaintiff, to have this information. In fact, we have information that we will share with the court at the hearing that highlights the competitively sensitive nature of this information.

Second, there is significant cost involved. Hyatt has already incurred thousands of dollars in outside vendor costs for capturing and imaging the email files of the Development Team. Another vendor is now processing these files so that the searches that Plaintiff wants can be conducted. This will cost thousands of dollars more.

The more significant expense will be for counsel to review the files to make sure that documents containing privileged, confidential and irrelevant information are not produced. Hyatt is not in a position at this time to say with certainty what the total cost will be, but Hyatt asks that the court require Plaintiff to pay for those costs. *Spears v. City of Indianapolis*, 74 F.3d 153 (7th Cir. 1996)(awarding a non-party the cost of complying with a subpoena).

Finally, Plaintiff asserts that Hyatt is the only source of information relevant to its claims. That is simply not true. If there were communications between Hyatt and Defendant, then Plaintiff should be able to obtain at least some evidence from Defendant. Hyatt understands that Defendant has produced approximately 15,000 pages of documents to Plaintiff. If Plaintiff's claim has any legs, one would think that there would be at least one document among those indicating Defendant communicated with Hyatt. Hyatt's counsel has repeatedly invited Plaintiff's counsel to provide some evidence that such communication exists, but to date Plaintiff has produced nothing.

CONCLUSION

Hyatt has not refused to produce documents.  Indeed, it began the production process before it was even aware a motion was going to be filed.  However, Hyatt intends to limit its production to those documents that are relevant, which is reasonable, based on the absence of any evidence that Plaintiff even has a claim.  For the reasons stated above, Hyatt respectfully requests that Plaintiff's subpoena be quashed or modified as Hyatt has proposed.


Dated: June 5, 2008                              **Hyatt Equities, LLC and**
                                                          **Hyatt Corporation**


                                                       s/ Darrell J. Graham
                                          By: _____
                                                    One of Their Attorneys



Darrell J. Graham
**The Law Office Of**
**Darrell J. Graham, LLC**
53 West Jackson Boulevard, Suite 1334
Chicago, IL  60604
(312) 922-4533
(312) 922-4757

**AFFIDAVIT OF
DAVID TARR
IN SUPPORT OF HYATT'S RESPONSE
TO MOTION TO COMPEL**

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

Guy T. Mitchell,

       **Plaintiff,**

     v.

Carbon Capital II, Inc.,

       **Defendant.**

**Case No.: 08 CV 3193
Pending in the US. Dist. Ct. for the
Southern Dist. of New York**

**The Honorable Judge Guzman
Magistrate Judge Cole**

## AFFIDAVIT OF DAVID TARR

1.     I am David Tarr, Senior Vice President - Real Estate and Development, North America Division- Eastern Region for Hyatt Hotels Corporation. In my capacity as Senior Vice President, my responsibilities include involvement on potential acquisitions by Hyatt Corporation or its subsidiaries, including Hyatt Equities, LLC.

2.     This Affidavit is based on my personal knowledge, and if asked to testify I would be competent to testify as stated herein. The statements herein are made subject to the penalty of perjury.

3.     I was on the Development Team that was involved in the analysis and negotiation of the prospective purchase of the Royal Palm Hotel (the "Hotel") in late 2007 and in early 2008. As a Development Team member, I was intimately involved in the negotiations for the purchase of the Hotel.

4.      I have reviewed the portions of Jonathan Francis' Declaration, which has been submitted in support of Mitchell's Motion to Compel Compliance with Subpoenas that refer to me. In particular, I refer to paragraphs 10-12 of Mr. Francis' Declaration and his Exhibits 1 and 2, in this Declaration.

5.      The statements that I made in my email to Mr. Mitchell (Francis Aff. Ex. 1) and my voicemail message to him (Francis Aff. Ex. 2) (collectively "Mitchell Communications") were not made because of any knowledge that I had regarding Carbon Capital II, Inc. or Blackrock Inc. (collectively "Carbon Capital") or its Settlement Agreement with Mr. Mitchell or Royal Palm Senior Investors, LLC (collectively "Royal Palm").

6.      At the time that I made the Mitchell Communications, I had no knowledge of any Settlement Agreement between Carbon Capital and Royal Palm.

7.      At the time that I made the Mitchell Communications, I had no knowledge that March 31, 2008, was a significant date to Royal Palm or Carbon Capital.

8.      On or before the time I made the Mitchell Communications, no one at Carbon Capital or any party related to Carbon Capital communicated with me regarding Royal Palm.

9.      I requested the extension of time from Mr. Mitchell because Hyatt needed more time to evaluate the purchase of the Hotel from Royal Palm.

10.     To my knowledge, I have never had any conversation with anyone at Carbon Capital regarding any prospective purchase by Hyatt.

11.     No one at Hyatt ever indicated to me that the reason for delaying the closing date to April 1, 2008, was because of anything having to do with Carbon Capital or its Settlement Agreement with Royal Palm.

2

12.    I am familiar with the terms of the prospective purchase and sale agreement between Hyatt and Royal Palm relating to the prospective purchase of the Hotel.

13.    According to those terms, Hyatt could terminate the agreement for any reason or no reason at all.  Therefore, Hyatt did not need to ask for an extension until April 1, 2008, in order to terminate negotiations with Royal Palm.

Further affiant sayeth not.

OFFICIAL SEAL
JULIE PORTER THOMPSON
NOTARY PUBLIC - STATE OF ILLINOIS
MY COMMISSION EXPIRES:12/05/10

_____
David Tarr

Sworn to before me
This _4_ day of June, 2008

_____
Notary Public

3